Michael T. **WOELFFER**, et al., Plaintiffs,

v.

**HAPPY STATES OF AMERICA, INC.**, Defendant.

No. 85 C 3301.

United States District Court, N.D. Illinois, E.D.

Aug. 7, 1985.

Gary L. Starkman, Scott Hodes, Arvey, Hodes, Costello, Burman, Michael J. Hayes, Asst. Atty. Gen., Chicago, Ill., for plaintiffs.

John L. Alex, David Lesht, Lockwood, Alex, Fitzgibbon & Cummings, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

DECKER, District Judge.

The Illinois Department of Commerce and Community Affairs (DCCA), its director, Michael T. Woelffer (Woelffer), and a private advertising agency, Zechman & Associates, Advertising, Inc. (Zechman)[1], brought this declaratory judgment action against Happy States of America, Inc. (Happy States), a Virginia corporation. Plaintiffs seek a judicial declaration that 1) the State of Illinois' use of the slogan, "Illinois, you put me in a happy state," in its current tourism campaign does not violate the federal or state law rights of defendant and 2) the Eleventh Amendment bars any counterclaim asserted by defendant. Plaintiffs invoke the court's jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338, 2201–02 (1982) and the Lanham Act, 15 U.S.C. §§ 1051–1127.

In response, Happy States filed an answer and counterclaim alleging copyright infringement under 17 U.S.C. § 501, false designation of origin or false description pursuant to 15 U.S.C. § 1125(a), and a variety of pendent state law claims. The counterclaim seeks declaratory relief, prospective injunctive relief, and attorney's fees and costs.[2]

The sole issue before the court is whether defendant's counterclaim must be dismissed as a matter of law on the basis of sovereign immunity.

## I. *Discussion*

The Eleventh Amendment provides in pertinent part: "The Judicial power of the United States shall not be construed to extend to any suit, in law or equity, commenced or prosecuted against one of the United States by Citizens of another State...." In considering the application of this jurisdictional bar, the court must initially determine "whether a particular suit in fact is a suit against a State." *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984).

In general, a suit brought against a state agency is proscribed by the Eleventh Amendment, regardless of the nature of the relief sought. *Id.; Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 3058, 57 L.Ed.2d 1114 (1978) (per curiam). Thus, the counterclaim against the DCCA, a state agency, is barred unless the State has waived its immunity.

In addition, the Eleventh Amendment bars a suit against state officials when the State is the real, substantial party in interest. *Pennhurst,* 104 S.Ct. at 908 (citations omitted). Such a suit is construed to be against the sovereign if " 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' " or if the effect of the judgment would be " 'to restrain the Government from acting or to compel it to act.' " *Id.* at 908 n. 11 (quoting *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963) ).

With respect to the counterclaim asserted against Woelffer, the director of the DCCA, there can be little doubt that the State of Illinois is the real, substantial party in interest. Although the counterclaim seeks declaratory and injunctive relief, the judgment sought would restrain the State from acting and interfere with the public

---

1. Zechman is an independent firm under contract with the DCCA to provide advertising services for the State. Its work product is subject to the review of DCCA officials.

2. The counterclaim does not seek money damages.

administration. Thus, the counterclaim against Woelffer is also barred by the Eleventh Amendment unless the State waived its immunity or otherwise consented to the suit.

For the purposes of exposition, the court will consider whether the state plaintiffs—the DCCA and Woelffer—waived their immunity before addressing the application, if any, of the Eleventh Amendment to Zechman, a private advertising agency.

### A. Waiver of Immunity by the State Plaintiffs

#### 1. Consent to Suit

■ As the Supreme Court recently reaffirmed, a state may waive its immunity and consent to suit in federal court. *Atascadero State Hospital v. Scanlon,* —— U.S. ——, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985). For example, in *Clark v. Barnard,* 108 U.S. 436, 2 S.Ct. 878, 27 L.Ed. 780 (1883), the State of Rhode Island voluntarily appeared in a federal interpleader action and prosecuted a claim to the fund in controversy. The Supreme Court held that, by voluntarily submitting to the federal court's jurisdiction, the State "made itself a party to the litigation to the full extent required for its complete determination." *Id.* at 448, 2 S.Ct. at 883.

■ Despite this broad statement, federal courts have consistently held that a state plaintiff does not waive its sovereign immunity with respect to all plausible counterclaims. To be cognizable, a counterclaim must 1) arise from the same event underlying the state's action and 2) be asserted "defensively, by way of recoupment, for the purpose of defeating or diminishing the State's recovery, but not for the purpose of obtaining an affirmative judgment against the State." *Georgia Department of Human Resources v. Bell,* 528 F.Supp. 17, 26 (N.D.Ga.1981) (quoting *Burgess v. M/V Tamano,* 382 F.Supp. 351, 356 n. 6

(D.Maine 1974)); *see Department of Transportation v. American Commercial Lines, Inc.,* 350 F.Supp. 835, 837–38 (N.D. Ill.1972); *cf. In re Greenstreet, Inc.,* 209 F.2d 660, 664 (7th Cir.1954). Indeed, this court has sustained a counterclaim seeking money damages against a state agency in an amount less than its claim. *Department of Transportation,* 350 F.Supp. at 838.

By initiating this litigation and invoking the court's jurisdiction, the DCCA and Woelffer have made a "voluntary submission" to the court's jurisdiction. *Clark,* 108 U.S. at 447, 2 S.Ct. at 882. Furthermore, the complaint and counterclaim involve a single underlying occurrence—the use of a slogan in the state's tourism campaign. If the counterclaim were dismissed in its entirety, the state plaintiffs would be "in the enviable position of 'heads [we] win, tails you lose.'" *Department of Transportation,* 350 F.Supp. at 837. Thus, the court concludes that the DCCA and Woelffer have at least partly waived their immunity in this case.

The parties sharply dispute, however, the extent of the waiver. The complaint only seeks declaratory relief. It is clear that the court has jurisdiction over the declaratory portion of the counterclaim, which largely mirrors the complaint.[3] The question becomes whether the injunctive relief requested in the counterclaim would constitute an impermissible affirmative judgment against the State.[4]

One federal court has held that a state governmental unit that files a declaratory judgment action does not thereby consent to being sued by a counterclaim. *Board of Regents v. Dawes,* 370 F.Supp. 1190, 1191 (D.Neb.1974). Because the counterclaim sought monetary damages, the court reasoned that it was not intended for recoupment or set-off. *Id.; see also Bell,* 528

---

3. That Happy States also raises federal and common law copyright infringement claims does not change this result, since these claims arise out of the identical transaction underlying plaintiffs' complaint.

4. This particular issue is a rara avis indeed. *Cf.* 3 J. Moore, *Moore's Federal Practice* ¶ 13.19 [2.–2], at 13–135 n. 9 (1985). Not surprisingly, the court has not found, and the parties have not cited, any case on all fours with this one.

F.Supp. at 26 (counterclaim for money damages barred by Eleventh Amendment because State's complaint did not seek monetary damages).

It is true that declaratory and injunctive relief are both considered prospective relief. *See, e.g., Toledo, Peoria & Western Railroad v. Illinois*, 744 F.2d 1296, 1299 n. 1 (7th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1751, 84 L.Ed.2d 815 (1985). It is also true that a successful injunctive counterclaim would defeat a declaratory complaint. Nevertheless, like monetary damages, injunctive relief goes much further. In this case, for instance, it would restrain the state plaintiffs from using the slogan that is at the heart of the State of Illinois' current tourism campaign. Such prospective injunctive relief is more intrusive than money damages. *Cf. Atascadero*, 105 S.Ct. at 3155 (Brennan, J., dissenting); *Pennhurst*, 104 S.Ct. at 915, n. 25; *Edelman v. Jordan*, 415 U.S. 651, 667, 94 S.Ct. 1347, 1357, 39 L.Ed.2d 662 (1974); *id.* at 680–84, 94 S.Ct. at 1364–66 (Douglas, J., dissenting); *see also Jensen v. State Board of Tax Commissioners*, 763 F.2d 272, 277 (7th Cir.1985). Moreover, as the Supreme Court has recently stressed, the State's consent to such an impact on its sovereignty must be unequivocally expressed. *Atascadero*, 105 S.Ct. at 3147; *Pennhurst*, 104 S.Ct. at 907.

■ Thus, in comparison to declaratory relief, the type of injunctive relief requested by Happy States is not sufficiently equivalent to a recoupment or set-off to fall within the narrow exception to sovereign immunity recognized by the courts. Rather, the injunctive relief sought is more like the affirmative relief prohibited in *Dawes* and *Bell*. Consequently, although this is a close question, the court concludes that the

state plaintiffs did not waive their sovereign immunity with respect to the injunctive portion of the counterclaim by filing their declaratory complaint.

■ Although the parties have not addressed the issue, the same reasoning applies to defendant's request for attorney's fees and costs, which, by definition, are not in the nature of a recoupment or set-off. A recoupment or set-off consists of valid counter causes of action or mutual debts that offset one another. *See, e.g., Department of Transportation*, 350 F.Supp. at 837; Black's Law Dictionary 1146, 1230 (rev. 5th ed. 1979). On the other hand, an award of attorney's fees in this case would be an extraordinary remedy available only to a prevailing party, *see* 17 U.S.C. § 505, or only if this were an "exceptional" case involving fraud or bad faith. *See* 15 U.S.C. § 1117. Thus, even though the state plaintiffs have pleaded a like request in their complaint, an award of attorney's fees or costs in favor of defendant would constitute an impermissible affirmative judgment under the circumstances of this case.

### 2. *Congressional Abrogation of Immunity*

Defendant next maintains that Congress abrogated the sovereign immunity of the state plaintiffs by enacting the Copyright Act of 1976, 17 U.S.C. §§ 101–810, and the Lanham Act, 15 U.S.C. §§ 1051–1127.[5]

In *Atascadero State Hospital v. Scanlon*, —— U.S. ——, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985), the Supreme Court recently held that a suit against two state agencies under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, was proscribed by the Eleventh Amendment. According to the Court, the fundamental nature of the interests implicated by the Elev-

---

5. Defendant relies primarily on *Mills Music, Inc. v. Arizona*, 591 F.2d 1278, 1285 (9th Cir.1979), which held that the sweeping language used by Congress in enacting the Copyright Act of 1909 pursuant to the Copyright and Patent Clause, U.S. Const., art. I, § 8, cl. 8, sufficiently indicates an intent to abrogate a state's Eleventh Amendment immunity. *See also Lemelson v. Ampex Corp.*, 372 F.Supp. 708, 710–12 (N.D.Ill.

1974) (holding state governments liable under federal patent laws); *but cf. Mihalek Corp. v. Michigan*, 595 F.Supp. 903, 905 (E.D.Mich.1984) (rejecting *Mills Music*), *appeal docketed*, No. 85–1593 (6th Cir. July 23, 1985). In light of the recent *Atascadero* decision, *see infra* 503–505, however, the cases cited by defendant are of questionable vitality.

**504**

enth Amendment dictates the conclusion that "Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute." *Id.*, 105 S.Ct. at 3147.

Applying this principle to the Rehabilitation Act, the Supreme Court noted that the statute "provides remedies for violations of § 504 by '*any* recipient of Federal assistance.'" *Id.* at 3149 (quoting 29 U.S.C. § 794(a)) (original emphasis). The Court acknowledged that the State of California is a recipient of federal aid—and thus literally within the class of defendants—under the statute. Nevertheless, this fact was not enough, because:

> given their constitutional role, the States are not like any other class of recipients of federal aid. A general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment. When Congress chooses to subject the States to federal jurisdiction, it must do so specifically.

*Id.* at 3149 (citations omitted).

The watershed principle enunciated in *Atascadero* governs this case. Section 501(a) of the Copyright Act of 1976 authorizes a copyright owner to institute an infringement action against "*anyone* who violates any of [his] exclusive rights." 17 U.S.C. § 501(a), (b). Similarly, the Lanham Act creates a cause of action against "*[a]ny person*" who falsely represents or falsely designates the origin of goods or services in interstate commerce. 15 U.S.C. § 1125(a). The sweeping language employed by Congress arguably includes

states within the class of copyright and trademark infringers. *Cf. Mills Music*, 591 F.2d at 1285. Under *Atascadero*, however, this is not enough to abrogate sovereign immunity.

The general authorization for suit in federal court against "anyone" who infringes a copyright or "any person" who falsely designates the origin of goods is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment.[6] *Atascadero*, 105 S.Ct. at 3149. Therefore, because Congress did not express its intention to abrogate the Eleventh Amendment in unmistakable language in the statutes themselves, the court holds that the Copyright Act of 1976 and the Lanham Act do not abrogate the Eleventh Amendment bar to suits against the States.

Again relying on *Mills Music*, defendant also argues, however, that the Eleventh Amendment is subordinate to the Copyright and Patent Clause of the Constitution, U.S. Const., art. I, § 8, cl. 8. Accordingly, defendant contends, any enactment by Congress that protects constitutionally recognized copyrights, including the Copyright Act, inherently abrogates sovereign immunity.[7] *Mills Music*, 591 F.2d at 1285–86. *Atascadero* disposes of this reasoning as well.[8]

Although the Rehabilitation Act was enacted pursuant to § 5 of the Fourteenth Amendment, the Supreme Court observed that "were we to view this statute as an enactment pursuant to the Spending Clause, Art. I, § 8, ... we would hold that there was no indication that the State of California consented to federal jurisdic-

---

6. In light of this opinion, the court need not address plaintiffs' additional contention that common principles of statutory construction, including the *ejusdem generis* rule, exempt States from liability under the Lanham Act. *Compare* 15 U.S.C. § 1125(a) *with* § 1054 (express inclusion of States in registration provision) *and* § 1127 (definition of "person").

7. Because the Lanham Act was enacted under the Commerce Clause, this argument is inapposite to defendant's false description claim. *cf.*

*Phi Delta Theta Fraternity v. J.A. Buchroeder & Co.*, 251 F.Supp. 968, 976 (W.D.Mo.1966).

8. In a passing reference, the Supreme Court recently assumed, without deciding, that the reasoning of *Mills Music* is correct. *Oneida County v. Oneida Indian Nation*, — U.S. —, 105 S.Ct. 1245, 1261, 84 L.Ed.2d 169 (1985). It is safe to surmise, however, that this inconsequential dictum is completely superceded by the subsequent comprehensive analysis is *Atascadero*.

tion."[9] *Atascadero,* 105 S.Ct. at 3150. Similarly, there is no indication on the record that the State of Illinois, by developing and using an advertising slogan pursuant to a tourism promotion campaign authorized by statute, consented to federal jurisdiction.

Thus, the court concludes that the DCCA and Woelffer did not waive, nor did Congress abrogate, their sovereign immunity with respect to defendant's counterclaim for injunctive relief and attorney's fees. Consequently, the Eleventh Amendment bars those portions of the counterclaim against the DCCA. This conclusion, however, does not end the inquiry with respect to Woelffer.

### B. *Ex parte Young and Woelffer*

Notwithstanding the impact that a suit may have on a state, the Supreme Court has long recognized an important, albeit shrinking, exception to the sovereign immunity of a state officer—a suit challenging the constitutionality of a state official's action is not one against the State under *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). *See Pennhurst,* 104 S.Ct. at 909; *see also Jensen,* 763 F.2d at 277. The *Young* exception, ignored by plaintiffs, "has been accepted as necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'" *Pennhurst,* 104 S.Ct. at 910 (quoting *Young,* 209 U.S. at 160, 28 S.Ct. at 454).

*Young* held that the Eleventh Amendment did not bar a federal action seeking to enjoin the Attorney General of Minnesota from enforcing a statute allegedly violative of the Fourteenth Amendment. 209 U.S. at 159–60, 28 S.Ct. at 453–54. Ironically, although it has recently restricted this exception, the Supreme Court, including both the majority and principal minority opinions

in *Pennhurst,* has repeatedly made clear that the *Young* exception extends to federal suits seeking prospective injunctive relief against state officers who have allegedly violated *federal statutes* as well. *See, e.g., Atascadero,* 105 S.Ct. at 3154 (Brennan, J., dissenting); *Pennhurst,* 104 S.Ct. at 909; *id.* at 932, 932 n. 27 (Stevens, J., dissenting); *Cory v. White,* 457 U.S. 85, 90–91, 102 S.Ct. 2325, 2328–29, 72 L.Ed.2d 694 (1982); *Edelman v. Jordan,* 415 U.S. at 664, 94 S.Ct. at 1356; *Worcester County Trust Co. v. Riley,* 302 U.S. 292, 297, 58 S.Ct. 185, 187, 82 L.Ed. 268 (1937). In particular, *Edelman v. Jordan* held that when a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief. 415 U.S. at 677, 94 S.Ct. at 1362. The need to promote the vindication of federal rights supports this distinction. *Pennhurst,* 104 S.Ct. at 910.

■ Because the injunctive relief requested by defendant against Woelffer rests squarely within the prospective injunctive relief authorized by *Edelman* and *Young,* it is not barred by the Eleventh Amendment.

■ Next, the court must determine whether the attorney's fees and costs sought against Woelffer in connection with the prosecution of the counterclaim are merely "ancillary" to the federal court's power to impose injunctive relief under *Edelman.* *See* 415 U.S. at 668, 94 S.Ct. at 1358. Although defendant cites no cases in favor of an award of fees against Woelffer, the Supreme Court has expressly reserved the question "whether a federal court could award attorney's fees against a State based [solely] on a statutory, non-civil-rights claim." *Maher v. Gagne,* 448 U.S.

---

**9.** The Supreme Court has held that "Congress may, in determining what is 'appropriate legislation' for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts." *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96

S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976). Congress did not enact the Copyright Act pursuant to its flexible Fourteenth Amendment powers. This fact obviously cuts against defendant's argument of Congressional abrogation of the Eleventh Amendment.

**506**

122, 130, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980). Support exists for the conclusion that an award of fees in this case would fall under the ancillary effects doctrine. *See, e.g., Hutto v. Finney,* 437 U.S. 678, 692, 696–98, 98 S.Ct. 2565, 2574, 2576–77, 57 L.Ed.2d 522 (1978); *but cf. id.* at 698 n. 31, 98 S.Ct. at 2577 n. 31 (distinguishing statutes rooted in Congress' article I power). Nevertheless, in light of the recent restrictive interpretation of the exceptions to sovereign immunity advanced by the Supreme Court and the absence of statutory authorization or Congressional intent analogous to that evident in 42 U.S.C. § 1988 or the Equal Access to Justice Act, Pub.L. No. 96–481, 94 Stat. 2325 (1980), *cf. Hutto,* 437 U.S. at 698 n. 31, 98 S.Ct. at 2577 n. 31; *Berman v. Schweiker,* 713 F.2d 1290, 1301 (7th Cir.1983), the court concludes that an award of attorney's fees would not be merely ancillary to the court's power but an expense on the state's treasury prohibited by the Eleventh Amendment.[10]

### C. *Derivative Sovereign Immunity and Zechman*

 Finally, plaintiffs argue that Zechman is a state agent entitled to sovereign immunity. Even though state officials may review Zechman's work for the DCCA, it is clear that the counterclaim against Zechman in fact is not against the State. *See Pennhurst,* 104 S.Ct. at 908.

First, Zechman is an independent, private advertising firm performing solely proprietary activities as opposed to an essential governmental function. *See Idaho Potato Commission v. Washington Potato Commission,* 410 F.Supp. 171, 176–77 (D.Idaho 1975). Consequently, Zechman is not an *alter ego* of the State. Moreover, the declaratory and injunctive relief requested by defendant against Zechman would have no

impact on the public fisc. In light of its juridical independence, any prospective injunctive relief granted against Zechman would *a fortiori* restrain it, and not the State, from acting.

Therefore, the court concludes that Zechman may not enjoy derivative sovereign immunity under the circumstances of this case. *See Hercules, Inc. v. Minnesota State Highway Department,* 337 F.Supp. 795, 801 (D.Minn.1972).[11] A contrary conclusion would immunize any independent contractor working for the State. Such a result would be unprecedented, unprincipled, and unsound.

### III. *Conclusion*

For the foregoing reasons, the court holds that the Eleventh Amendment bars those portions of defendant's counterclaim seeking injunctive relief against the DCCA and attorney's fees and costs against the DCCA and Woelffer. The court has subject matter jurisdiction over the remaining claims presented in this litigation.

---

10. Examination of the relevant statutory provisions for attorney's fees fails to evince an intention of Congress to waive the sovereign immunity of the States. *See* 17 U.S.C. § 505; 15 U.S.C. § 1117; and accompanying legislative history.

11. The cases cited by plaintiffs are factually distinguishable. *See Matranga v. Travelers In-*

*surance Co.,* 563 F.2d 677 (5th Cir.1977) (involving Medicare fiscal intermediaries); *St. Joseph Hospital v. Electronic Data Systems,* 573 F.Supp. 443 (S.D.Tex.1983) (involving Medicaid fiscal intermediaries); *see also Vanderberg v. Carter,* 523 F.Supp. 279 (N.D.Ga.1981), *aff'd,* 691 F.2d 510 (11th Cir.1982).