The REGENTS OF THE UNIVERSITY OF CALIFORNIA, Plaintiff,

v.

ELI LILLY & CO., Defendant.

No. C 90 0373 DLJ.

United States District Court, N.D. California.

April 17, 1991.

See also 734 F.Supp. 911.

---

Gerald P. Dodson, Townsend and Townsend, Thomas D. Nevins, Broad, Schulz, Larson & Wineberg, San Francisco, Cal., Robert C. Miller, and Allen B. Wagner, Counsel with the University of California, Oakland, Cal., for plaintiff.

Robert A. Weikert with Thelen, Marrin, Johnson & Bridges, San Francisco, Cal., and Charles E. Lipsey and Susan H. Griffin with Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, D.C., for defendant.

## ORDER

JENSEN, District Judge.

## I. INTRODUCTION

On April 10, 1991, this Court heard oral argument on the following motions: plaintiff's motion for leave to amend the complaint; defendant's motion to amend the original answer, add affirmative defenses and counterclaims, and for an extension of time for discovery; defendant's motion to compel joinder of a necessary party; and lastly, plaintiff's motion for appointment of a special master.

This order addresses only the defendant's motion to add an interference counterclaim, defendant's motion for joinder of a necessary party and plaintiff's motion for appointment of a special master. At the hearing the Court granted plaintiff's motion to amend the complaint and asked the parties to submit discovery schedules. Furthermore, a status conference was set for July 17 at 9 a.m. For the following reasons, defendant's motion to add an interference counterclaim under 35 U.S.C. 291 is DENIED; defendant's motion to compel joinder of a necessary party is DENIED; and plaintiff's motion for appointment of special master is DENIED.

## II. BACKGROUND

In the original complaint filed by the Regents of the University of California ("U.C.") on February 7, 1990, U.C. claimed that defendant, Eli Lilly and Company ("Eli Lilly") infringed, *inter alia*, U.C.'s U.S. Patent No. 4,431,740 ("the 740 patent"). The 740 patent is directed to the production of human insulin, the hormone used to treat diabetes, by recombinant DNA technology. Plaintiff contends that this invention was developed by researchers at the University of California at San Francisco.

Eli Lilly manufactures insulin, through recombinant DNA methods using a gene which encodes proinsulin. The proinsulin gene presently utilized by Eli Lilly in its process was obtained from Genentech, Inc. ("Genentech") pursuant to an agreement between Eli Lilly and Genentech relating to the production of insulin. *See* Defendant's Memorandum in Support of Motion for Joinder, Exhibit A (hereinafter, Defendant's Motion for Joinder). Eli Lilly contends that it is the use of this proinsulin gene which U.C. alleges infringes the 740 patent. *See* Defendant's Motion for Joinder at 5. U.C. contends that the alleged acts of infringement are Eli Lilly's "manufacture and sale in the United States of its

recombinant DNA origin human insulin products." *See* Plaintiff's Memorandum in Support of Motion to Amend the Complaint at 2 (hereinafter, Plaintiff's Motion to Amend).

In Eli Lilly's countermotion it contends that under an agreement between it and Genentech, Genentech assigned to it an exclusive license in claim 6 of U.S. Patent No. 4,704,362 ("the 362 patent," also referred to as the "Riggs–Itakura" patent) owned by Genentech. Eli Lilly, therefore, contends that it is the exclusive licensee of the subject matter claimed in claim 6 of that patent. The agreement entered into on August 25, 1978, provides in part:

> [G]enentech hereby grants to Lilly the exclusive, irrevocable world-wide rights with the right to grant sublicenses, to use all Genentech Recombinant Microorganisms for the limited purpose of manufacturing, selling and using Recombinant Insulin without regard to Genentech Patent Rights, and in connection only with such production, sale and use, to use all technical information and know-how supplied by Genentech hereunder. Rights granted hereunder shall include the right to practice under any applicable Genentech Patent Rights.

*See* Defendant's Motion for Joinder, Exhibit A at pp. 18–19, para. 6.01. This agreement does not expressly state that Genentech assigned, in whole or in part, any patent rights owned by it. Eli Lilly, however, contends that the agreement encompassed the subject matter covered in claim 6 of Genentech's 362 patent and, therefore, it is the exclusive licensee of such rights. *See* Defendant's Memorandum in Response to Plaintiff's Motion to Amend and to Amend Answer and Counterclaims and for Enlargement of Time for Discovery at 7 (hereinafter, Defendant's Counterclaims). Elsewhere in the briefs, Eli Lilly contends that it is the *beneficial owner* of claim 6 of the 362 patent. *See* Defendant's Motion for Joinder at 9. In light of these facts, defendant asserts it may allege a counterclaim of interference under 35 U.S.C. section 291. Also, defendant contends that if it is not allowed to assert the interference counterclaim in its own name, it should be allowed to join Genentech as a necessary party to the interference counterclaim.

Further, defendant asserts that during discovery in a collateral suit against Genentech [1] it discovered a document pertaining to an agreement entered into by Genentech and U.C. which suggested the existence of possible defenses to the alleged infringement of the 740 patent. According to defendant, Genentech and U.C. purportedly entered into an agreement which settled a dispute which arose over an improper transfer to Genentech of chemical and biological materials by two U.C. post-doctoral fellows, Dr. Peter Seeburg and Dr. Axel Ullrich. Defendant believes that certain of these transferred materials were used to produce or are included in the proinsulin gene supplied to it by Genentech. *See* Defendant's Countermotion at 5. According to defendant, the agreement, attached to defendant's countermotion as tab c, releases Genentech from all claims U.C. otherwise had against Genentech from the use of the materials transferred. Defendant believes that Genentech agreed to pay U.C. a portion of the monies received from defendant pursuant to the Genentech/Lilly agreement in return for the release. *Id.* at 6. In light of this alleged agreement, defendant asserts that its use of the proinsulin gene has been, in essence, authorized by U.C. and, therefore, U.C. has no right of action for infringement of the 740 patent against Eli Lilly. Under the facts as alleged, defendant seeks to amend the answer to assert the affirmative defenses of estoppel, waiver, release, license, laches and payment. Additionally, defendant seeks to file a counterclaim for declaratory judgement based on the alleged agreement between Genentech and U.C.

## III. DISCUSSION

A. *Because the defendant lacks standing to assert an interference counterclaim under section 291, its proposed amendment would be futile.*

Under Rule 15(a) of the Federal Rules of Civil Procedure a party shall plead in re-

---

1. *Eli Lilly and Co. v. Genentech, Inc.,* Civil Action No. IP 87 219C (S.D.Ind.); *Genentech, Inc.* *v. Eli Lilly and Co.,* Civil Action No. IP 88 1463C (S.D.Ind.).

sponse to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading. Since the Court granted plaintiff's motion to amend the complaint, defendant's motion to amend the answer is moot. Rather, defendant is required to file a new answer to the amended complaint within 10 days after service of the amended complaint.

Plaintiff, however, argues that defendant should not be allowed to add to the answer the proposed counterclaim of interference under 35 U.S.C. section 291 because such a counterclaim would be futile for two reasons: one, defendant does not have standing to assert a counterclaim because it is not the owner of the 362 patent, rather Genentech is the owner; and two, defendant is barred from bringing an interference counterclaim because plaintiff, as an agent of the state, is immune from suit under the Eleventh Amendment.

■ A claim is futile if "it appears beyond doubt" that the claim will be dismissed for failure to state a claim. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 188 (9th Cir.1987).

■ An interference action may be brought under section 291, which provides:

The owner of an interfering patent may have relief against the owner of another by civil action, and the court may adjudge the question of the validity of any of the interfering patents, in whole or in part. The provisions of the second paragraph of section 146 of this title shall apply to actions brought under this section.

The second paragraph of section 146 of title 35 provides, in pertinent part:

Such suits may be instituted against the party in interest as shown by the records of the Patent and Trademark Office at the time of the decision complained of, but any party in interest may become a party to the action.

As plaintiff explains, in the United States the first to *invent* something is entitled to a patent. *See* 35 U.S.C. § 102(g). Thus, an interference action under 291 is designed to ascertain if the same invention is claimed in two patents, and, if so, to determine the priority of inventorship between interfering patents. *See Ralston Purina Co. v. Far-Mar-Co., Inc.*, 772 F.2d 1570, 1574 n. 2 (Fed.Cir.1985). In addition to determining the priority of inventorship as between interfering patents, the court may also consider the validity of the competing patents. 35 U.S.C. § 291. An action under section 291 is only possible if two or more parties are claiming the same or substantially the same subject matter. *Nitz v. Ehrenreich*, 537 F.2d 539, 543 (C.C.P.A.1976). Generally, interference claims are resolved while patent applications claiming the same subject matter are pending in the United States Patent Office. Nevertheless, once two or more patents are issued to different owners, and thereafter are found to contain interfering claims, i.e., both owners' claims are directed to the same invention, the only way to resolve priority of inventorship is under 35 U.S.C. section 291. *See Engler v. General Electric Co.*, 144 F.2d 191 (2nd Cir.1944), *cert. denied*, 325 U.S. 857, 65 S.Ct. 1184, 89 L.Ed. 1977 (1945), (an applicant for a patent could not maintain a suit for interference under former section 66 (current section 291) of title 35 before his patent was granted).

Defendant contends that as the exclusive licensee of claim 6 of the 362 patent, which it acquired from Genentech, it is entitled to assert a counterclaim under section 291 to determine the priority of inventorship as between claim 6 of the 362 patent and plaintiff's 740 patent even without joining Genentech as a party to the action.[2]

Plaintiff, however, contends that since defendant, as an exclusive licensee, is not the owner of the patent it does not have standing to bring the counterclaim for in-

---

**2.** Specifically, defendant believes that some claims of the 740 patent interfere with claim 6 of the 362 patent, and because the subject matter of the 362 patent was invented prior to the subject matter of the claims of the 740 patent, claim 6 of the 362 patent should be granted priority and the interfering claims of the 740 patent should be dismissed. *See* Defendant's Countermotion at 6 and 7.

terference and, therefore, the counterclaim is futile. As explained above, section 291 actions are governed by the provisions of the second paragraph of section 146 which provides that "suits may be instituted against the party in interest as shown by the records of the Patent and Trademark Office at the time of the decision complained of, but any party in interest may become a party to the action." And, section 291 itself states, "The owner of an interfering patent may have relief against the owner of another by civil action ..." The question arises as to what interest is sufficient to enable a person to initiate an interference claim under section 291.

In *Dooley Improvements, Inc. v. Motor Improvements, Inc.*, 66 F.2d 553 (3rd Cir.), *cert. denied*, 290 U.S. 689, 54 S.Ct. 127, 78 L.Ed. 594 (1933), (interpreting predecessor statute, 35 U.S.C. § 66,[3] to current section 291) the court held that a patentee, though having granted an exclusive license, was still considered an "owner" under the meaning of then section 66 because said licensor still held legal title and was, therefore, an indispensable party defendant to an interference suit. The court upheld the district court's dismissal of the complaint for interference against the exclusive licensee defendant since, even though the exclusive licensee under the facts[4] was also considered an owner within the meaning of section 66, all owners were indispensable parties and without all owners present no action could be maintained. *See Dooley Improvements*, 66 F.2d at 554. In so holding, the district court distinguished inter-ference actions from patent infringement actions:

> Title that will enable a licensee to sue in his own name to protect a patent against infringement is not the question here. This proceeding under section 4918 (section 4918 of the Revised Statute was 35 U.S.C. § 66) is to destroy patents, not to protect them. In such a proceeding all the owners of the patents must be brought before the court as in any condemnation or cancellation proceeding.

*Dooley Improvements*, 1 F.Supp. at 642.

Here, defendant contends that it is an exclusive licensee of part of the 362 patent. Regardless of this characterization, the agreement makes clear that title to the subject matter of the agreement is to remain in Genentech for a 20 year period after the effective date of the agreement which was August 25, 1978. *See* Defendant's Motion to Compel Joinder, Exhibit A, pp. 19, 20. Additionally, the agreement provides that "know-how and chemical and biological materials including Recombinant Microorganisms furnished to Lilly for use following the seventh (7th) year of this Agreement shall at all times remain the property of Genentech." *Id.*, Exhibit A, p. 20. Thus, following *Dooley*, defendant cannot bring this interference claim unless Genentech, as title holder of the patents and property therein, is joined since Genentech is an "owner" and indispensable party under the provisions of section 291.

In finding the rationale in *Dooley* persuasive, the Court recognizes the subtle

---

**3.** 35 U.S.C. section 66 is the predecessor statute to section 291 and it states:

> Whenever there are interfering patents, any person interested in any one of them, or in the working of the invention claimed under either of them, may have relief against the interfering patentee, and all parties interested under him, by suit in equity against the owners of the interfering patentee, and all parties interested under him, by suit in equity against the owners of the interfering patent; and the court, on notice to adverse parties, and other due proceedings had according to the course of equity, may adjudge and declare either of the patents void in whole or in part, or inoperative, or invalid in any particular part of the United States, according to the interest of the parties in the patent or the invention patented. But no such judgment or adjudication shall affect the right of any person except the parties to the suit and those deriving title under them subsequent to the rendition of such judgment.

**4.** The district court explained that even if the agreement conveyed an assignment to defendant, not merely a license, as plaintiff contended, it did not necessarily follow that the assignor/licensor was divested of all ownership such that an interference action could proceed in the assignor's absence. *Dooley Improvements v. Motor Improvements*, 1 F.Supp. 641, 642 (D.C.Del.1932), *aff'd* 66 F.2d 553 (3rd Cir.), *cert. denied*, 290 U.S. 689, 54 S.Ct. 127, 78 L.Ed. 594 (1933).

distinctions between the facts in *Dooley* and this case. For example, in *Dooley* the interference action was being brought *against* defendants, whereas here it is being brought by a defendant, and the statute in effect at the time provided that such actions must be brought "against the owners of the interfering patent," but the statute did not employ similar language for those who could initiate such actions. Rather, the statute stated that "any person interested" in an interfering patent could seek relief. 35 U.S.C. § 66, *superseded by* 35 U.S.C. § 291. In contrast, section 291 of the current statute provides an "owner" of an interfering patent may have relief against the "owner of another."

Although the language has changed, the Court believes that the old statute as well as the current statute required that the person initiating the action have an ownership interest. This conclusion is in accord with the language of then section 66, which states, "But no such judgment or adjudication shall affect the right of any person except the parties to the suit and those deriving title under them subsequent to the rendition of such judgment." This language suggests that parties to an interference action are title holders of the patent. This conclusion is also supported by the rationale in *Dooley* which explained that the purpose of an interference action is to "destroy" patents and, therefore, all owners of the patents must be before the court. Whether initiating a section 291 action or defendants to such an action, all owners of the patents at issue should be brought before the court because each stands the chance of having their patent declared invalid and void. In addition to this requirement, section 146, incorporated into the provisions of section 291, provides that any party in interest may become a party to the action.

Since the Court finds that joinder of Genentech as an indispensable party would be barred by the Eleventh Amendment (see below), defendant's counterclaim would, upon motion, be dismissed and is, therefore, futile. *See DCD Programs*, 833 F.2d at 188.

■ Even if Genentech, as "owner" under section 291, was not an indispensable party, under the facts of this case defendant has an insufficient interest to bring an interference claim in its own name. Defendant contends that the agreement between Genentech and it encompassed claim 6 of the 362 patent. This agreement, however, does not amount to an assignment of the patent itself, either in whole or in part. The agreement states that Genentech grants the exclusive, world-wide right to use the Genentech Recombinant Microorganisms for the limited purposes set forth. The agreement, however, states that this right is granted "without regard to Genentech Patent Rights." This language suggests that no patent right, in whole or in part, was assigned, rather a kind of sharing of technology and know-how was to take place between the parties. At most, the language warrants that Genentech would not sue defendant for infringement of Genentech patent rights while the agreement was in effect. Thus, defendant was licensed to practice under the Genentech patent rights without the fear of infringing Genentech's patents. This type of arrangement is a mere license and would not grant in defendant the right to sue for infringement of the patent in its own name. (*See Waterman v. Mackenzie*, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923 (1891) where the court set forth three types of transfers that amounted to an assignment of a patent right which gives the assignee the right to sue infringers in the assignee's own name: (1), "the whole patent, comprising the exclusive right to make, use, and vend the invention throughout the United States"; (2), "an undivided part or share of that exclusive right"; or (3), "the exclusive right under the patent within and throughout a specified part of United States." *Id.* at 255, 11 S.Ct. at 335. The Court stated that all other transfers not falling into one of these categories is a mere license which does not convey a title in the patent and does not give the holder the right to bring suit in his own name. *Id.*) Since, as an exclusive licensee, defendant could not bring an infringement suit in its own name without joining Genentech, it is equally pre-

cluded from bringing an interference action, here a counterclaim, in its own name. Arguably, the rationale for not allowing an exclusive licensee to bring an interference action in its own name is stronger than in the infringement context because the owners of the patents in an interference action run the risk of having their patents declared invalid. *See Dooley,* 1 F.Supp. at 642. Therefore, the Court concludes that defendant does not have standing to assert an interference counterclaim under section 291 in its own name.

B. *An interference action under section 291 is barred by the Eleventh Amendment.*

 Plaintiff contends that as an agent of the state it is immune from a section 291 counterclaim under the doctrine of sovereign immunity under the Eleventh Amendment. The parties do not dispute that U.C., as a branch of the government of the State of California, is entitled to the full protection of the Eleventh Amendment. *See e.g., BV Engineering v. University of California, Los Angeles,* 858 F.2d 1394, 1395 (9th Cir.1988), *cert. denied,* 489 U.S. 1090, 109 S.Ct. 1557, 103 L.Ed.2d 859 (1989) (" 'The University of California and the Board of Regents are considered to be instrumentalities of the state,' *Jackson v. Hayakawa,* 682 F.2d 1344, 1350 (9th Cir. 1982), and therefore enjoy the same immunities as the State of California.") In *BV Engineering* the court held that UC was immune from suit for copyright infringement due to the Eleventh Amendment. And, in *Chew v. State of California,* 893 F.2d 331, 334 (Fed.Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 44, 112 L.Ed.2d 20 (1990), the court held that plaintiff's suit for patent infringement damages was barred by the Eleventh Amendment and that the patent statutes did not waive this immunity. The parties do dispute, however, the issue of whether U.C. has waived its immunity by bringing this infringement action.

When a state unequivocally waives its immunity and consents to suit in federal court the Eleventh Amendment will not bar the action. *Atascadero State Hosp. v.*

*Scanlon,* 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985) (where Court held the Art. III, § 5, of the California Constitution was not a waiver of the Eleventh Amendment immunity). For example, in *Clark v. Barnard,* 108 U.S. 436, 2 S.Ct. 878, 27 L.Ed. 780 (1883), the State of Rhode Island voluntarily appeared in a federal interpleader action and prosecuted a claim to the fund in controversy. The Supreme Court held that by voluntarily submitting to the federal court's jurisdiction, the State, "made itself a party to the litigation to the full extent required for its complete determination." *Id.* at 448, 2 S.Ct. at 883. In *Woelffer v. Happy States of America, Inc.,* 626 F.Supp. 499 (N.D.Ill.1985) the court, referring to *Clark,* stated that "despite this broad statement, federal courts have consistently held that a state plaintiff does not waive its sovereign immunity with respect to all plausible counterclaims." *Id.* at 502. In order to be a cognizable counterclaim, the court in *Woelffer* stated that the counterclaim must: one, "arise from the same event underlying the state's action," and two, "be asserted defensively, by way of recoupment, for the purpose of defeating or diminishing the State's recovery, but not for the purpose of obtaining an affirmative judgment against the State." *Id.* In *Woelffer* the court addressed the availability of various types of equitable relief for counterclaims asserted in a copyright action. The court held that a counterclaim for injunctive relief against further copyright infringement was "not sufficiently equivalent to a recoupment or set-off to fall within the narrow exception to sovereign immunity recognized by the court." *Id.* at 503. The court did find, however, that it had jurisdiction over the declaratory portion of the counterclaim, "which largely mirrors the complaint." *Id.* at 502.

Applying *Woelffer,* plaintiff contends that it has not waived its immunity from a counterclaim under section 291 because defendant seeks affirmative relief. Defendant contends, however, that the counterclaim under section 291 is solely a defensive claim to determine if the plaintiff's 740 patent is void and if it lacks priority over the 362 patent. Thus, defendant contends it seeks nothing in the way of affirmative

relief, such as an injunction or monetary damages; rather, the interference claim is intended only to eliminate plaintiff's recovery.

It is true that defendant seeks no monetary damages, nor does it assert an infringement claim against plaintiff, however, an interference action under section 291 may result in a declaration that U.C.'s patent or Genentech's patent is invalid, in whole or in part. The Court believes that such an affirmative declaration of invalidity is beyond the waiver of immunity intended by such cases as *Woelffer*. Although, the law in this area is sparse, a few older cases under section 66 suggest that a judgment of invalidity in an interference proceeding is affirmative relief. For example, in *Electrical Accumulator Co. v. Brush Electric Co.*, 44 F. 602 (C.C.Ohio 1890), the court held that a defendant may obtain "affirmative relief" on an answer alleging the validity of his own patent, and the invalidity of plaintiff's, even though the defendant did not assert the claim in a cross-bill. *See also, Lockwood v. Cleaveland*, 6 F. 721 (C.C.N.J.1881). Affirmative relief would result if the Court was to grant defendant's prayer and declare U.C.'s 740 patent invalid. Such relief goes beyond mere recoupment or set-off from U.C.'s infringement action against defendant, and, therefore, is barred by the Eleventh Amendment.

The parties did not argue whether or not the counterclaim arises from the same events underlying U.C.'s action, and since the relief sought is barred by the Eleventh Amendment, the Court does not need to address this question. A cursory review of the facts underlying U.C.'s infringement action and a review of the relevant inquiry in interference actions (e.g. when the patents at issue where in fact invented), however, suggests that the Court would be delving into an entirely different set of facts which do not involve the same events underlying the infringement claim. This consideration may be weakened by the fact that defendant has asserted an affirmative defense of invalidity under 35 U.S.C. section 102(g) which will entail a review similar in scope to that reviewed in a section 291 action.

For the above reasons, the Court concludes that U.C. is immune under the Eleventh Amendment from a counterclaim of interference under section 291 as proposed by defendant.

Plaintiff does not object to defendant's proposed affirmative defenses and first and second counterclaims for declaratory judgment.

C. *Genentech, as owner of the 362 patent is an indispensable party to a section 291 action, however joinder of Genentech is barred by the Eleventh Amendment.*

■ It is clear that an exclusive licensee can join a patent owner as a defendant to an infringement suit when the owner is unwilling to voluntarily join the action. *See Independent Wireless Tel. Co. v. Radio Corp. of America*, 269 U.S. 459, 46 S.Ct. 166, 70 L.Ed. 357 (1926), (exclusive licensee as coplaintiff could join owner of patent, being with in jurisdiction, as party defendant to an infringement action). This result seems equally applicable to an interference action under section 291—indeed, it is compelled by the rationale in *Dooley*, 66 F.2d at 554, where all owners of a patent are indispensable parties to an interference proceeding.

Even though defendant, as an exclusive licensee, arguably would be able to compel joinder of Genentech as an indispensable party, it cannot under these facts because U.C. is immune from an interference action brought by way of a counterclaim in the name of Genentech for the same reasons U.C. is immune from counterclaim asserted by defendant. Specifically, the affirmative relief sought by way of a declaration of interference is beyond the scope of a State's waiver of its Eleventh Amendment immunity.

D. *Plaintiff's request for reference of privilege disputes to a special master.*

Plaintiff's request for a special master is DENIED. The Court, however, hereby orders, pursuant to Local Rule 415–1, that discovery matters of this case be referred to the Chief Magistrate to be heard and

considered at the convenience of his calendar, or to be assigned by him to another available Magistrate. Counsel will be advised of the date, time and place of the hearing by notice from the assigned Magistrate.

## IV. CONCLUSION

For the foregoing reasons, the Court rules that plaintiff's motion to amend the complaint is GRANTED. The amended complaint is to be filed within 10 days from the date of this order. Defendant's motion to add affirmative defenses of estoppel, waiver, release, license and laches is GRANTED, as is defendant's motion to add the first and second counterclaims of declaratory judgment. Defendant's motion to add the counterclaim of interference under 35 U.S.C. section 291 to the answer is DENIED. Defendant's motion to join Genentech as a necessary party is DENIED. Lastly, plaintiff's motion for appointment of a special master is DENIED; however, discovery matters are hereby referred to the Chief Master.

IT IS SO ORDERED.