In re DEPARTMENT OF ENERGY
STRIPPER WELL EXEMPTION
LITIGATION.

ANADARKO PRODUCTION
COMPANY, Appellant,

v.

STATE OF NEW MEXICO, Appellee.

No. 10–89.

Temporary Emergency Court of Appeals.

Argued Sept. 12, 1991.
Decided Jan. 24, 1992.

Joseph W. Kennedy, Robert W. Coyken-
dall, Mark A. Ohlsen, and Gerald N. Capps,
Morris, Laing, Evans, Brock and Kennedy,

Chartered, Wichita, Kansas, James T. Ward, Jr., Anadarko Petroleum Co., Houston, Tex. were on the briefs for appellant.

Dahl H. Harris, Sp. Asst. Atty. Gen., Tom Udall, Atty. Gen., Christopher D. Coppin, Asst. Atty. Gen., State of N.M., Santa Fe, N.M. were on the brief for appellee.

Before GRANT, METZNER and PECK, Judges.

JOHN W. PECK, Judge:

Appellant Anadarko Production Company [Anadarko] appeals the district court's dismissal of its cross-claim against the State of New Mexico. Anadarko contends that the district court had jurisdiction over New Mexico by reason of the district court's original jurisdiction in this action and by reason of New Mexico's voluntary intervention in this case; Anadarko alleges that New Mexico waived its claims of immunity under the Eleventh Amendment to the United States Constitution. The State of New Mexico argues that its intervention in this suit for the limited purpose of asserting claims against the escrow fund did not operate as a waiver of the State's Eleventh Amendment immunity. For the reasons presented below, this Court affirms the district court's dismissal of Anadarko's cross-claim.

## I. FACTS

In 1978 Anadarko filed suit against the Department of Energy [DOE] seeking to enjoin DOE from enforcing the civil and criminal penalties of 10 C.F.R. 205.203 and Federal Energy Administration [FEA] Ruling 1974–29, 39 Fed.Reg. 44,414 (Dec. 24, 1974). This Ruling concerned the determination that injection wells were not "stripper wells"[1] for the purpose of calculating an oil property's eligibility for stripper well pricing. Anadarko's action was consolidated with other suits in the United States District Court for the District of Kansas.

See In re Department of Energy Stripper Well Exemption Litigation, 472 F.Supp. 1282 (J.P.M.L.1979) (No. 378). The district court in Kansas enjoined the DOE from enforcing the Ruling; the court permitted oil producers to sell oil from injection wells at stripper well prices, which were higher than the regulated oil prices. Nevertheless, the court required the oil producers to deposit into an escrow fund the difference between the prices received on the open market and the regulated prices. The Temporary Emergency Court of Appeals [TECA] subsequently upheld FEA Ruling 1974–29 in In re Department of Energy Stripper Well Exemption Litigation, 690 F.2d 1375 (Temp.Emer.Ct.App.1982), cert. denied sub nom., Energy Reserves Group, Inc. v. Hodel, 459 U.S. 1127, 103 S.Ct. 763, 74 L.Ed.2d 978 (1983), and ruled on the merits against oil producers such as Anadarko.

After TECA's decision, the Commonwealth of Pennsylvania, the State of New Mexico and other states intervened as Plaintiffs in the litigation claiming their shares in the distribution of the escrow fund. In 1986 the United States District Court for the District of Kansas approved a "Final Settlement Agreement" in which the parties agreed to compromise and settle all claims to the escrow fund. See In re Department of Energy Stripper Well Exemption Litigation, 653 F.Supp. 108 (D.Kan.1986), aff'd, 855 F.2d 865 (Temp. Emer.Ct.App.1988). The Final Settlement Agreement did not address issues related to the extent of oil producers' liability to the escrow fund, however. Id., 653 F.Supp. at 114.

On September 23, 1988 DOE counterclaimed against Anadarko and other oil producers, alleging that the producers had not deposited sufficient funds into the escrow account to satisfy their liability. On December 21, 1990 Anadarko answered the counterclaim and filed a cross-claim against

1. A "stripper well" is a term that does not define a process like "strip mining". It merely indicates a class of wells that produces an average of fewer than ten barrels of oil per day. The status of a well classified by the Department of Energy as a "stripper well" must be determined annually. Stripper wells are the "clunkers" of oil production; just like old cars, the number of stripper wells has remained relatively steady over the last decade as new wells which have become less productive replace abandoned stripper wells.

the State of New Mexico. In its cross-claim Anadarko alleged that its deficiencies in payments were attributable in part to oil taken "in kind" by the State of New Mexico as a royalty interest owner of the Langley Mattix Pennrose Sand Unit. Anadarko operated this Unit, which had been granted stripper well status at one time by counting its injection wells as stripper wells.

## II. APPELLATE JURISDICTION

On April 19, 1991 the United States District Court for the District of Kansas granted New Mexico's motion to dismiss Anadarko's cross-claim. 763 F.Supp. 498. The district court held that the Eleventh Amendment to the United States Constitution barred Anadarko's action.

In the 1971 Amendments to the Economic Stabilization Act [ESA] Congress vested TECA with jurisdiction "of all appeals from the district courts of the United States in cases and controversies arising under this title or under regulations or orders issued thereunder." 12 U.S.C. § 1904 note, § 211(b)(2) (incorporated in section 5(a)(1) of the Emergency Petroleum Allocation Act [EPAA], 15 U.S.C. § 754(a)(1)).

TECA's appellate jurisdiction is narrowly limited to the determination of issues arising under the Economic Stabilization Act [ESA], the Emergency Petroleum Allocation Act [EPAA], and their corresponding regulations. *United States Department of Energy v. Brimmer*, 776 F.2d 1554, 1556 (Temp.Emer.Ct.App.1985), *cert. denied sub nom., Inexco Oil Co. v. United States Department of Energy*, 475 U.S. 1045, 106 S.Ct. 1261, 89 L.Ed.2d 571 (1986). An issue arising under these Acts is one which involves the construction, applicability or effect of the Acts or the regulations. *Isla Petroleum Corp. v. Puerto Rico Department of Consumer Affairs*, 811 F.2d 1511, 1513 (Temp.Emer.Ct.App.1986), *rev'd on other grounds*, 485 U.S. 495, 108 S.Ct. 1350, 99 L.Ed.2d 582 (1988). Anadarko alleges that its claim against the State of New Mexico arises out of the State's intervention in litigation involving the distribution of the escrow fund. New Mexico claims it did not waive its Eleventh Amend-ment immunity by intervening in this litigation. The question presented to this Court is whether a state has waived its immunity by intervening to participate in the distribution of the escrow fund created to facilitate settlement of claims arising under the ESA, the EPAA, and regulations promulgated under these Acts. This Court has previously considered the applicability of the Eleventh Amendment in the context of stripper well litigation. In our previous decision we held that by participating in the Final Settlement Agreement, the State of Alaska neither waived its sovereign immunity nor consented to be sued. *See In re Department of Energy Stripper Well Exemption Litigation (Atlantic Richfield v. Alaska)*, 945 F.2d 1575, 1583–84 (Temp. Emer.Ct.App.1991). Because this case presents an issue arising under ESA, EPAA, or regulations promulgated thereunder, this Court has appellate jurisdiction over the appeal of the district court's decision.

## III. DISCUSSION

Because District Judge Theis dismissed Anadarko's cross-claim based on Eleventh Amendment grounds, this Court conducts *de novo* review of the Judge's legal conclusions. *Highland Petroleum, Inc. v. United States Department of Energy*, 798 F.2d 474, 476–477 (Temp.Emer.Ct.App.1986).

The Eleventh Amendment of the United States Constitution provides that:

(t)he Judicial power of the United States shall not be construed to extend to any suit in law or in equity commenced or prosecuted against any one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

In the absence of consent, the Eleventh Amendment serves as a general bar to suits brought in federal courts against a state or its agencies or departments. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). Federal courts have long recognized, however, that States may waive their immunity, and con-

sent to suit in federal court. *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985). Nevertheless, federal courts will find an express waiver of Eleventh Amendment immunity only when stated "by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974).

■ Federal courts have provided a tough standard for finding an implied waiver of Eleventh Amendment immunity as well. Federal courts have jurisdiction over a counterclaim brought against a state only if the counterclaim arises from the same event underlying the state's cause of action, and only if the claimant asserts his or her claim defensively by way of recoupment to defeat or diminish the state's recovery. *Woelffer v. Happy States of America, Inc.,* 626 F.Supp. 499, 502 (N.D.Ill.1985).

■ Anadarko argues that the State of New Mexico waived its immunity by intervening in this action as a claimant to the escrow fund. The district court found that New Mexico did not intervene to litigate the merits of the action. Rather, the court determined that New Mexico intervened merely to stake a claim for a small portion of the escrow fund. The district court held that New Mexico's intervention for this limited purpose was by itself insufficient to constitute a waiver of the State's Eleventh Amendment immunity.

New Mexico intervened in the instant action to claim for its citizens entitlement to a portion of the escrow fund. Anadarko claims that New Mexico removed the State's royalty interest oil from Anadarko's wells, sold the oil at stripper well prices, failed to remit to the escrow fund additional money the State received for the oil sold above the regulated price, and left Anadarko with liability to the escrow fund for the additional money that the State received. The district court held that the issue of entitlement to the escrow fund was previously established by the Final Settlement Agreement, and that the issue of liability to the escrow fund was separate from the issue of entitlement to the fund. *See In re Department of Energy Stripper Well Exemption Litigation,* 739 F.Supp. 1449, 1455 (D.Kan.1990). The Final Settlement Agreement did not settle the issue of deficiencies to be paid to the escrow fund. *See Stripper Well,* 653 F.Supp. at 114. The court found that Anadarko's claim against New Mexico did not arise from the same transactions or occurrences as New Mexico's claim to the fund. Thus, the district court concluded that New Mexico did not impliedly waive its Eleventh Amendment immunity. *See Woelffer,* 626 F.Supp. at 502. This Court agrees with the district court's conclusions.

TECA's decision to uphold the validity of FEA Ruling 1974–29 established in effect that the crude oil overcharges in the escrow fund would have to be distributed. *See Stripper Well,* 653 F.Supp. at 110. Appellant Anadarko is an oil producer held liable for payment of overcharges into the escrow fund; New Mexico is a state that sought entitlement to a portion of this fund. The event underlying Anadarko's cross-claim against New Mexico is Anadarko's alleged entitlement to reimbursement and restitution of the amounts paid into the escrow fund by the company on behalf of the state. The event underlying New Mexico's intervention in this action is the State's entitlement to a share of the escrow fund due to oil producers' overcharges imposed upon New Mexico's citizens. These underlying events are not the same. It may be conceded that the parties' claims arise out of the same general subject matter; they both arise out of acts and practices that allegedly violated the ESA, the EPAA, and their regulations. But having a common general subject matter does not satisfy the *Woelffer* test for waiver of Eleventh Amendment immunity. *See Woelffer,* 626 F.Supp. at 502. Thus, absent an express consent to be sued, New Mexico did not waive its Eleventh Amendment immunity concerning liability to the escrow fund. *See Stripper Well (Atlantic Richfield v. Alaska),* 945 F.2d at 1583–84.

Anadarko claims that in its motion to intervene, New Mexico subscribed to and joined in Pennsylvania's motion to intervene. Anadarko contends that in Pennsylvania's motion the Commonwealth itself claimed an interest in the adequacy of Anadarko's payments into the escrow fund. Thus, Anadarko maintains that New Mexico voluntarily asserted an affirmative claim against the Appellant. Anadarko argues that in doing so New Mexico expressly consented to a waiver of its Eleventh Amendment immunity. This Court finds the Appellant's arguments unpersuasive. As the district court found, New Mexico intervened in this action merely to claim for its citizens a portion of the escrow fund. As the Supreme Court has noted, federal courts will find an express waiver of Eleventh Amendment immunity only when the text of a document leaves no room for any other reasonable construction. *Edelman,* 415 U.S. at 673, 94 S.Ct. at 1361.

## IV. CONCLUSION

Since this Court finds that New Mexico neither expressly nor impliedly waived its Eleventh Amendment immunity, this Court AFFIRMS the district court's dismissal of Anadarko's cross-claim.