498

In re The DEPARTMENT OF ENERGY STRIPPER WELL EXEMPTION LITIGATION.

Paul B. FLETCHER, Sr., and Anadarko Production Company, Plaintiffs,

v.

UNITED STATES DEPARTMENT OF ENERGY, et al., Defendants.

M.D.L. No. 378.
Civ. A. No. 79–1386.

United States District Court,
D. Kansas.

April 19, 1991.

Joseph W. Kennedy, Mark A. Ohlsen, Morris, Laing, Evans, Brock & Kennedy, Wichita, Kan., for Anadarko Production Co.

Tom Udall, Atty. Gen., Christopher D. Coppin, Asst. Atty. Gen., Dahl L. Harris, Sp. Asst. Atty. Gen., for the Com'r of Public Lands, Sante Fe, N.M., for the State of N.M.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on the State of New Mexico's motion to dismiss the cross-claim filed by Anadarko Production Company (Doc. 2000). The court does not believe oral argument would be of material assistance in the determination of this motion and therefore denies Anadarko's request for argument (Doc. 2010). The matter has been fully briefed and the court is prepared to rule. The court also has before it Anadarko's surreply (Doc. 2019), which was filed without leave of court, and New Mexico's objection to Anadarko's surreply and request to disregard (Doc. 2021), neither of which warrant further discussion.

Following the filing of a counterclaim by the United States against Anadarko Production Company ("Anadarko"), Anadarko filed an answer and cross-claim against the State of New Mexico. Doc. 1983. Anadarko alleged that it is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Houston, Texas. The intervenor New Mexico is one of the 50 States of the United States and is a party to this action having been allowed to intervene by order of the court dated April 7, 1983. Cross-claim, ¶¶ 1–2. Anadarko alleged jurisdiction of the parties by reason of the court's original jurisdiction of this case and by reason of New Mexico's voluntary intervention in the case. Anadarko alleged that New Mexico had waived any claim of immunity under the Eleventh Amendment to the United States Constitution or any other deficiency in jurisdiction. *Id.* ¶ 3.

Anadarko alleges that its claim against New Mexico arises out of the following factual background. In 1978, Anadarko filed suit against the Department of Energy (DOE) in the United States District Court for the Northern District of Texas seeking to enjoin the DOE from enforcing the civil and criminal penalties of 10 C.F.R. § 205.203 and FEA Ruling 1974–29 regarding the counting of injection wells for the purpose of determining a property's eligibility for stripper well pricing. Anadarko's suit was consolidated with other cases in the present multi-district litigation. On August 3, 1979, the court entered a preliminary injunction restraining DOE from enforcing its regulation against Anadarko. The court established an escrow fund to which Anadarko was required to deposit the difference between the price received pursuant to any certification of a property as a stripper well property and the price for which the crude oil would have been sold had it been sold pursuant to a certification of the property as a nonstripper well property. The merits of this action were

determined adversely to Anadarko (among others) in *In re: Department of Energy Stripper Well Exemption Litigation,* 690 F.2d 1375 (Temp.Emer.Ct.App.1982), *cert. denied sub nom. Energy Reserves Group, Inc. v. Hodel,* 459 U.S. 1127, 103 S.Ct. 763, 74 L.Ed.2d 978 (1983). Since that time, this court has been involved in the remedy phase of the litigation. Cross-claim, ¶¶ 4–6.

One of the properties operated by Anadarko and certified by it as stripper by counting injection wells was the Langley–Mattix Penrose Sand Unit (Langley–Mattix) in which the State of New Mexico owned an interest. New Mexico took its share of production in kind and sold the same to Famariss and Shell Oil Company. Anadarko alleges on information and belief that New Mexico sold such production at the stripper price. Under the terms of the Langley–Mattix Unit agreement, New Mexico is obligated to repay Anadarko for amounts incurred by Anadarko by reason of the delivery of production in kind. Anadarko alleges that New Mexico is obligated to repay Anadarko for any amounts determined to be owed by Anadarko to the escrow account for overcharges on oil taken in kind from the Langley–Mattix Unit by New Mexico. Cross-claim, ¶¶ 7–8.

The United States filed a counterclaim against Anadarko for an alleged deficiency in payments to the escrow fund. Anadarko alleges that included in the counterclaim are amounts attributable to oil taken in kind from the Langley–Mattix Unit by New Mexico and sold by the state at the stripper price. Anadarko asserts that if it is required by settlement or judgment to pay into the escrow account these amounts, New Mexico is liable to Anadarko for any sums actually paid. Anadarko alleges that it has been determined that, as of November 30, 1990, the amount of the alleged liability for oil taken in kind by New Mexico is $856,486. This amount includes interest on the principal sums at the DOE policy rate through March 31, 1989, and at the T–Bill rate thereafter. Cross-claim, ¶¶ 9–10.

In Count I of its cross-claim, Anadarko alleges that New Mexico was at all relevant times an interest owner in the Langley–Mattix Unit and was entitled to and did take its share of crude oil production from the Unit in kind and sold it to third parties. New Mexico took approximately 19,372 barrels of crude oil in kind from the Langley–Mattix Unit during the relevant time period which it sold to Famariss or Shell Oil Company. Anadarko alleges on information and belief that New Mexico received stripper prices on the sale of this in kind production and failed to escrow the difference between the stripper price and the controlled price. Anadarko never received any proceeds from the sale of oil taken in kind by New Mexico. In the event Anadarko is required by judgment or settlement to pay the escrow fund the sum of $856,486 applicable to this in kind oil taken and sold by New Mexico, Anadarko asserts that it is entitled to contribution and/or indemnity from New Mexico pursuant to the Langley–Mattix Unit agreement for such amount, together with interest at the T–Bill rate from and after December 1, 1990 until paid. Cross-claim, ¶¶ 11–16.

In Count II, Anadarko alleges that in the event it is required by judgment or settlement to pay the escrow account the amount of $856,486 for the in kind crude oil taken and sold by New Mexico from the Langley–Mattix Unit, it is entitled to common law contribution and/or indemnity from New Mexico for any amount paid on behalf of New Mexico, together with interest. In Count III, Anadarko alleges that New Mexico will be unjustly enriched if Anadarko is not permitted to recoup amounts paid by it for alleged deficiencies related to the production from the Langley–Mattix Unit taken in kind by New Mexico. Anadarko alleges entitlement to restitution for any deposits of principal or interest required to be made by Anadarko to the escrow fund attributable to oil taken in kind by New Mexico. Cross-claim, ¶¶ 17–20. Anadarko prayed for judgment in the amount of $856,486 together with interest from December 1, 1990.

Since the filing of its cross-claim, Anadarko has settled with DOE. Anadarko agreed to deposit into the escrow account the sum of $6,952,677 ($856,486 of which

was attributed to oil taken in kind from the Langley–Mattix Unit and sold by the State of New Mexico). Doc. 1987.

In 1983, the State of New Mexico, through its Attorney General, intervened in this action by joining the Commonwealth of Pennsylvania in asserting a claim for its citizens to a portion of the court-supervised escrow account corresponding to the percentage share consumed within the state of all refined petroleum products consumed within the United States during the period of federal price controls on crude oil. In 1986, the court approved a settlement agreement to compromise and settle all claims to the escrow account containing the deposited stripper well overcharges. Each of the States and Territories were to receive (and since that time have received) distributions of funds from the escrow account based on percentage shares set forth in the agreement.

New Mexico argues that the cross-claim is subject to dismissal for lack of jurisdiction and improper venue. Specifically, New Mexico asserts that it is immune from suit under the Eleventh Amendment of the United States Constitution and that it has not waived its immunity. New Mexico also argues that venue is improper in this District, and that the court should decline to exercise pendent or ancillary jurisdiction since Anadarko's claim arises, if at all, under state law.

Anadarko argues that New Mexico has waived its Eleventh Amendment immunity by intervening in this litigation and accepting the benefits of the partial settlement of this litigation. Anadarko also argues that New Mexico has waived any objection to venue by intervening. Anadarko asserts it has a federal common law claim for indemnification in the nature of setoff and recoupment, which can be satisfied out of future distributions of settlement proceeds to New Mexico.

## I. Eleventh Amendment

■ The Eleventh Amendment provides:

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. The United States Supreme Court has consistently held that this amendment bars not only suits brought in federal court by citizens of other states, but also suits brought by the state's own citizens. *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974). In the absence of consent, a suit in which a state or one of its agencies or departments is named as defendant is barred by the Eleventh Amendment. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984). The Eleventh Amendment defense may be raised at any time, *id.* at 99 n. 8, 104 S.Ct. at 907 n. 8; *Edelman,* 415 U.S. at 678, 94 S.Ct. at 1363, and applies regardless of the nature of the relief sought. *Pennhurst,* 465 U.S. at 100, 104 S.Ct. at 907; *see also Missouri v. Fiske,* 290 U.S. 18, 27, 54 S.Ct. 18, 21, 78 L.Ed. 145 (1933). A suit against state officials for retroactive monetary relief, whether based on federal or state law, must be brought in state court. *See Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

■ A state may waive its immunity and consent to suit in federal court. The state's consent must, however, be unequivocally expressed. *Pennhurst,* 465 U.S. at 99, 104 S.Ct. at 907. As the Supreme Court stated in *Edelman,* a waiver of Eleventh Amendment immunity will be found only when stated "by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *Edelman,* 415 U.S. at 673, 94 S.Ct. at 1361 (quoting *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)). "Constructive consent" is not sufficient to overcome sovereign immunity. A state does not, by silence, expressly state that it has waived its Eleventh Amendment immunity. *Amisub (PSL), Inc. v. Colorado Department of Social Services,* 879 F.2d 789, 792–93 (10th

Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3212, 110 L.Ed.2d 660 (1990).

Anadarko argues that New Mexico waived its immunity by intervening in this action as a claimant to the escrow fund. Additionally, Anadarko argues that New Mexico's consent to suit in federal court is not an issue because its claim against New Mexico is for setoff or recoupment. Alternatively, Anadarko argues that New Mexico's Attorney General has the authority to waive and did waive the state's Eleventh Amendment immunity.

■ Anadarko first argues that the state of New Mexico waived its Eleventh Amendment immunity by intervening in this action. New Mexico intervened for the limited purpose of securing for its citizens a portion of the escrow fund. The state did not intervene to litigate the merits of the action. The merits of the action had been determined adversely to Anadarko (among others) by the time New Mexico (among others) intervened to stake a claim to the escrowed funds. Intervention for the limited purpose of claiming a portion of the escrowed funds is insufficient by itself to constitute a waiver of Eleventh Amendment immunity.

Anadarko next argues that by voluntarily appearing in federal court to lay claim to a fund in controversy, a state waives its Eleventh Amendment immunity to claims arising "from the same event underlying the state's action ... asserted defensively by way of recoupment, for the purpose of defeating, or diminishing the state's recovery ..." Doc. 2011, at p. 5 (quoting *Woelffer v. Happy States of America, Inc.,* 626 F.Supp. 499, 502 (N.D.Ill.1985)). Specifically, Anadarko argues that if the claim against the state arises out of the same transactions or occurrences as the state's claim and does not exceed the state's claim (i.e., if the claim against the state does not seek affirmative relief but merely seeks to defeat or diminish the state's recovery) then the issue of whether the state has consented to suit is irrelevant. Doc. 2011, at p. 9. The court does not disagree with this proposition; however, the court finds it inapplicable in the present case.

■ By bringing suit in federal court, a state voluntarily submits to the court's jurisdiction over any counterclaim which arises from the same transaction or occurrence which is the subject of the state's claim. *Burgess v. M/V Tamano,* 382 F.Supp. 351, 355 (D.Me.1974), *vacated and remanded on other grounds,* 564 F.2d 964 (1st Cir.1977), *cert. denied sub nom. M/V Tamano v. United States,* 435 U.S. 941, 98 S.Ct. 1520, 55 L.Ed.2d 537 (1978). Any claim for setoff against a state is barred because a setoff claim, by definition, arises from an extrinsic transaction. However, a recoupment claim may be brought against the state since a recoupment claim arises from some feature of the transaction upon which the state's claim is based. *In re Monongehela Rye Liquors, Inc.,* 141 F.2d 864, 869 (3d Cir.1944). Thus, for the court to have jurisdiction over a counterclaim brought against a state, the counterclaim must arise from the same event underlying the state's action and must be asserted defensively by way of recoupment to defeat or diminish the state's recovery. *Woelffer v. Happy States of America, Inc.,* 626 F.Supp. 499, 502 (N.D.Ill.1985); *see Frederick v. United States,* 386 F.2d 481, 488 (5th Cir.1967) (when the United States sues it waives sovereign immunity with respect to defendant's claims in recoupment, i.e., arising out of the same transaction or occurrence which is the subject matter of the government's suit, and to the extent of defeating the government's claim but not to the extent of affirmative relief different from or in excess of the relief sought by the government).

■ New Mexico intervened to claim a portion of the escrowed funds to return to its citizens as restitution for the stripper oil overcharges that occurred during the relevant time period. Anadarko's claim against New Mexico arises out of Anadarko's liability for the stripper oil overcharges it caused or for which it is otherwise responsible. Anadarko's claim arises specifically from New Mexico's taking of royalty oil in kind, selling it allegedly at stripper prices, and failing to remit the stripper price increment to the court's es-

crow. The issue of liability to the escrow is separate from the issue of entitlement to a share of the escrowed overcharges. The Final Settlement Agreement resolved the latter issue. *In re: Department of Energy Stripper Well Exemption Litigation,* 739 F.Supp. 1449, 1455 (D.Kan.1990). Anadarko's claim does not arise from the same transactions or occurrences as the state of New Mexico's claim. The claim is barred by the Eleventh Amendment unless the New Mexico Attorney General waived that immunity by intervening in this action.

 A state official cannot waive the state's immunity unless the state, by constitution or statute, has either waived or given the official the authority to waive immunity from suit in federal court. *See Board of Regents of the University of Nebraska v. Dawes,* 370 F.Supp. 1190, 1193 (D.Neb.1974). The issue of whether such authority has been given is a matter of state law. *Id.* Under New Mexico law, the Attorney General has no common law powers or duties. He possesses only those powers provided by the state constitution or statutes. *State ex rel. Norvell v. Credit Bureau of Albuquerque,* 85 N.M. 521, 524, 514 P.2d 40, 43 (1973); *State ex rel. Attorney General v. Reese,* 78 N.M. 241, 246–48, 430 P.2d 399, 404–06 (1967). Anadarko does not cite any statute which specifically waives or gives the Attorney General the authority to waive immunity from suit in federal court.

Anadarko argues that the following factors indicate a waiver of immunity by the Attorney General. First, New Mexico has waived common law immunity for actions based on written contracts with the state. *See* N.M.Stat.Ann. § 37–1–23 A (1978) ("Governmental entities are granted immunity from actions based on contract, except actions based on a valid written contract."). Anadarko argues that this action is based in part on a written contract, the operating agreement.[1] Second, Anadarko argues that the Attorney General

represented he had the authority to consent to federal court jurisdiction by intervening in this action. Third, Anadarko argues that the Attorney General has broad powers to direct state litigation in any forum, N.M.Stat.Ann. § 8–5–2 (1978), and broad powers to compromise or settle any suits in which the state is a party. *Id.* § 36–1–22. Fourth, the state executed the Final Settlement Agreement and accepted monies thereunder. *See* Doc. 2011, at pp. 12–14 (citing *Maine Association of Interdependent Neighborhoods v. Petit,* 659 F.Supp. 1309 (D.Me.1987)).

The court will not infer a waiver of sovereign immunity from the existence of these factors. The fact that the state of New Mexico has waived the immunity of governmental entities for actions based on written contracts is not determinative. The Eleventh Amendment would be rendered meaningless if the court were to construe a state's limited waiver of immunity from suit in its own courts into a broad waiver of immunity from suit in federal court.

Under New Mexico law, the Attorney General has the following duties:

B. prosecute and defend in any other court or tribunal [other than the state supreme court and court of appeals] all actions and proceedings, civil or criminal, in which the state may be a party or interested when, in his judgment, the interest of the state requires such action or when requested to do so by the governor;

. . . .

J. appear before local, state and federal courts and regulatory officers, agencies and bodies, to represent and to be heard on behalf of the state when, in his judgment, the public interest of the state requires such action or when requested to do so by the governor; and

K. perform all other duties required by law.

N.M.Stat.Ann. § 8–5–2. The Attorney General also possesses power to settle litigation:

---

1. The court specifically declines to involve itself in the parties' dispute regarding who was a party to the Unit Agreement and/or the Unit Operating Agreement. The court will assume

for the purposes of this motion to dismiss that some claim of Anadarko's is based on a written contract with the state of New Mexico.

The attorney general and district attorneys of this state in their respective districts, when any civil proceedings may be pending in their respective districts, in the district court, in which the state or any county may be a party, whether the same be an ordinary suit, scire facias proceedings, proceedings growing out of any criminal prosecution, or otherwise, shall have power to compromise or settle said suit or proceedings, or grant a release or enter satisfaction in whole or in part, of any claim or judgment in the name of the state or county, or dismiss the same, or take any other steps or proceedings therein which to him may appear proper and right; and all such civil suits and proceedings shall be entirely under the management and control of the said attorney general or district attorneys, and all compromises, releases and satisfactions heretofore made or entered into by said officers are hereby confirmed and ratified.

*Id.* § 36-1-22.

The state of New Mexico's appearance in this case for purposes of claiming a portion of the escrow fund and its participation in the Final Settlement Agreement in which it received a portion of the escrow fund constituted only a limited waiver of the state's Eleventh Amendment immunity. New Mexico waived its Eleventh Amendment immunity with respect to the settlement aspect of the litigation, i.e., the issue of who was entitled to the escrow fund and in what share. *See In re Washington Public Power Supply System Securities Litigation,* 720 F.Supp. 1379, 1413-14 (D.Ariz. 1989) (motion to approve a class action settlement that also released claims asserted by plaintiff class against state in state court; the state of Washington's participation in settlement negotiations, entry into a settlement agreement, the submission of pleadings and appearance before the court seeking approval of the settlement indicate the state's consent to federal court jurisdiction over the settlement aspect of the litigation). The New Mexico Attorney General did not broadly waive the state's Eleventh Amendment immunity by intervening. The court holds that the Eleventh Amendment is a bar to this action.

The court notes that it recognized a common law cause of action for reimbursement or restitution[2] in the *Mobil v. Koch* and *Mobil v. Sun* opinions. *In re: Department of Energy Stripper Well Exemption Litigation,* 743 F.Supp. 1467 (D.Kan.1990) (*Mobil v. Koch*); *In re: Department of Energy Stripper Well Exemption Litigation,* 743 F.Supp. 1476 (D.Kan.1990) (*Mobil v. Sun*). The fact that the court has recognized a cause of action for reimbursement is not determinative of the jurisdictional question. In its claims against Koch and Sun, Mobil alleged subject matter jurisdiction based on diversity of citizenship. Additionally, neither Koch nor Sun challenged subject matter jurisdiction, personal jurisdiction, or venue. *See Mobil v. Koch,* 743 F.Supp. at 1468; *Mobil v. Sun,* 743 F.Supp. at 1478.

## II. Pendent or Ancillary Jurisdiction

 The doctrine of pendent jurisdiction does not permit an evasion of the immunity guaranteed by the Eleventh Amendment. *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 121, 104 S.Ct. 900, 919, 79 L.Ed.2d 67 (1984). While the court might have the discretion to exercise pendent jurisdiction over a state in conjunction with the determination of a federal claim, the Eleventh Amendment would bar an award of retroactive damage relief on that pendent claim as well as on the federal claim. *Id.* at 120-21, 104 S.Ct. at 918-19; *see Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment. *Pennhurst,* 465 U.S. at 121, 104 S.Ct. at 919. A suit against state officials for ret-

---

**2.** Initially, the court did not specify the exact nature of the common law cause of action which the court recognized. *See* 743 F.Supp. at 1476 (referring to restitution, reimbursement, contribution, or indemnity). In a later case, the court clarified that the cause of action was for reimbursement or restitution. *See In re: Department of Energy Stripper Well Exemption Litigation,* 752 F.Supp. 1534, 1536 & n. 1 (D.Kan. 1990).

roactive monetary relief, whether based on federal or state law, must be brought in state court. *See Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

Given this resolution, the court does not address New Mexico's remaining arguments or the merits of Anadarko's claims.

IT IS BY THE COURT THEREFORE ORDERED that Anadarko's request for oral argument (Doc. 2010) is hereby denied.

IT IS FURTHER ORDERED that the State of New Mexico's motion to dismiss Anadarko's cross-claim (Doc. 2000) is hereby granted.