In re Tamra M. **KOEHLER**, Debtor.

Tamra M. **KOEHLER**, Plaintiff,

v.

**IOWA COLLEGE STUDENT AID COMMISSION**, Defendant.

Tamra M. **KOEHLER**, Plaintiff,

v.

**NATIONAL CREDIT SERVICES CORP.**, Defendant.

Bankruptcy No. 4–94–6040.
Adv. No. 4–96–0087.

United States Bankruptcy Court,
D. Minnesota.

Jan. 6, 1997.

Russell A. Norum, Wayzata, MN, for plaintiff.

Daniel S. Rabin, Berman, Singer & Rabin, P.A., Overland Park, KS, Rodney A. Honkanen, Wagner, Falconer & Judd, Ltd., Minneapolis, MN, for defendant National Credit Service Corp.

Janet S. Wisby, Assistant Attorney General, Des Moines, IA, for defendant ICSAC.

*ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNT TWO OF PLAINTIFF'S COMPLAINT*

NANCY C. DREHER, Bankruptcy Judge.

The above-entitled matter came on for hearing before the undersigned on the motion of Defendant, Iowa College Student Aid Commission (ICSAC), to dismiss Count Two of the Plaintiff's Complaint due to lack of subject matter jurisdiction under the sovereign immunity doctrine of the Eleventh Amendment to the United States Constitution. In light of the recent United States Supreme Court decision in *Seminole Tribe of Florida v. Florida,* —— U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), the parties were asked to brief the issue of the effect of the Eleventh Amendment on this Court's jurisdiction over Count Two of the Plaintiff's Complaint. After carefully considering the arguments of counsel, I hold that ICSAC has waived its Eleventh Amendment sovereign immunity by filing a counterclaim in this proceeding, that this Court does not lack subject matter jurisdiction over Count Two, and that Defendant's motion to dismiss Count Two should be denied.

*FACTS*

Tamra M. Koehler (Plaintiff) is a resident of the State of Minnesota. Between October, 1981 and August, 1984, the Plaintiff executed a series of promissory notes totaling $10,000 in principal amount in exchange for student loans received under a government-funded student loan program. ICSAC is an agency of the State of Iowa authorized under Iowa law to administer and enforce the Iowa Guaranteed Loan Program which served as guarantor of the Plaintiff's loans. Plaintiff defaulted on her obligation to repay the loans. Subsequently, ICSAC paid the debt pursuant to the terms of its guaranty and the notes were endorsed and assigned to ICSAC for collection.

On December 1, 1994, the Plaintiff filed a petition for relief under Chapter 13 of the United States Bankruptcy Code. Neither ICSAC nor the Plaintiff filed a proof of claim on behalf of ICSAC in the Chapter 13 case. During the case, ICSAC allegedly made attempts to collect the loans in willful violation of the automatic stay. Plaintiff's Chapter 13 plan was confirmed on February 3, 1995. After paying 100 percent of the filed claims under the Chapter 13 Plan, the Plaintiff received a discharge on February 2, 1996.

On March 29, 1996, the Plaintiff commenced the current adversary proceeding. In Count One of her Complaint, Plaintiff seeks a declaration that the debt to ICSAC was discharged. In Count Two, Plaintiff seeks monetary damages against ICSAC for alleged willful violations of the automatic stay.

On behalf of ICSAC, the Attorney General for the State of Iowa filed an Answer to the Plaintiff's Complaint and a Counterclaim for judgment in the amount of $13,706.39, the unpaid principal and interest balance of the loans, plus collection costs. ICSAC then moved to dismiss Count Two of the Complaint, arguing that the Bankruptcy Court lacks subject matter jurisdiction under the sovereign immunity doctrine of the Eleventh Amendment.[1] The issue to be decided is whether and to what extent ICSAC has waived its Eleventh Amendment immunity against suit for damages by filing a counterclaim seeking judgment for the debt.

*DECISION*

I. THE ELEVENTH AMENDMENT

The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."[2] Prior to the ratification of the Con-

---

1. ICSAC does not assert that this Court lacks subject matter jurisdiction over Count One of the Complaint, which seeks prospective declaratory relief. *See Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) (prospective injunctive relief available against state officials).

2. While the language of the Eleventh Amendment rather clearly limits a state's immunity from suit to situations where the state has been sued by a non-resident, it has not been so interpreted. Long ago, this language was interpreted to preclude suits brought against the state by any individual, whether a resident of the state or not.

stitution, it was widely understood that the common-law principle of sovereign immunity would prevent Article III's grant of federal judicial power from making states unwilling defendants in federal court. *Employees v. Missouri Dep't of Pub. Health and Welfare,* 411 U.S. 279, 291–92, 93 S.Ct. 1614, 1621, 36 L.Ed.2d 251 (1973) (Marshall, J., concurring). "Because of the problems of federalism inherent in making one sovereign appear against its will in the courts of the other, a restriction upon the exercise of the federal judicial power has long been considered appropriate...." *Id.* at 294, 93 S.Ct. at 1622–23. The Eleventh Amendment was added to the Constitution in 1798 to affirm the Framers' original intent that "the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 98, 104 S.Ct. 900, 906–07, 79 L.Ed.2d 67 (1984). Therefore, by restricting the grant of judicial power found in Article III, the Eleventh Amendment represents a constitutional limitation on the subject matter jurisdiction of the federal courts. *Id.*

■ In this case, the Plaintiff, a resident of the State of Minnesota, has commenced an adversary proceeding seeking damages against ICSAC, an agency of the State of Iowa. It is immediately apparent that the language of the Eleventh Amendment purports to foreclose federal subject matter jurisdiction over Count Two of the Plaintiff's Complaint by its very terms. There are two recognized exceptions to the reach of the Eleventh Amendment, however. Notwithstanding an assertion of Eleventh Amendment immunity, a federal court may exercise jurisdiction over a suit for damages between an individual and a state if: 1) Congress has validly abrogated the state's sovereign immu-

nity; or 2) the state has voluntarily waived its sovereign immunity. *Pennhurst State Sch. & Hosp.,* 465 U.S. at 99, 104 S.Ct. at 907–08.

## II. CONGRESSIONAL ABROGATION IN SECTION 106(a)

■ The first exception to the reach of the Eleventh Amendment which must be considered is the doctrine of congressional abrogation. It is well-established that Congress, under § 5 of the Fourteenth Amendment, has the power to abrogate a state's Eleventh Amendment immunity by making its intention to do so "unmistakably clear in the language of the statute." *Blatchford v. Native Village of Noatak,* 501 U.S. 775, 786, 111 S.Ct. 2578, 2584–85, 115 L.Ed.2d 686 (1991); *Dellmuth v. Muth,* 491 U.S. 223, 227–28, 109 S.Ct. 2397, 2400, 105 L.Ed.2d 181 (1989); *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976).

In 1994, former § 106(c),[3] now § 106(a), of the United States Bankruptcy Code was amended to make Congress' intention clear in this regard. In clear and unmistakable language, current § 106(a) purports to abrogate the sovereign immunity of any "governmental unit," including that of a state,[4] for actions arising out of § 362 of the Bankruptcy Code.[5] The amendment was enacted to address the Supreme Court's decisions in *United States v. Nordic Village, Inc.,* 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992), and *Hoffman v. Conn. Dep't of Income Maintenance,* 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989). Under the rulings in those cases, an earlier and less specifically-worded version of current § 106(a) was found to be an insufficiently clear expression of congressional intent to

---

*Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

3. 11 U.S.C. § 106(c) (1988).

4. Section 101(27) provides:

"government unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a

Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.
11 U.S.C. § 101(27) (1994).

5. Section 106(a) provides, in relevant part:

"Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following: (1) Sections ... 362,...."
11 U.S.C. § 106(a) (1994).

abrogate the sovereign immunity of the states and the federal government. *See Nordic Village,* 503 U.S. at 34, 112 S.Ct. at 1015; *Hoffman,* 492 U.S. at 104, 109 S.Ct. at 2824.

 Almost immediately following the 1994 Amendments, commentators questioned the constitutionality of new § 106(a) as applied to a state's Eleventh Amendment sovereign immunity.[6] The Supreme Court's answer to these questions was not long in coming. In *Seminole Tribe of Florida v. Florida,* — U.S. —, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), the Supreme Court held that Congress may not use its Article I powers to abrogate a state's Eleventh Amendment immunity. The *Seminole* decision arose in the context of congressional action taken under Article I, Section 8, clause 3 of

the Constitution, the Indian Commerce Clause. The power given to Congress "to establish uniform Laws on the subject of Bankruptcies throughout the United States" is also an Article I power. U.S. CONST. art. I, § 8, cl. 4. With near uniformity,[7] the commentaries written and the cases decided since *Seminole* have concluded that it follows from *Seminole* that § 106(a) is unconstitutional insofar as it attempts to abrogate an unconsenting state's sovereign immunity from suit in federal court.[8] This Court agrees. The *Seminole* decision goes well beyond the Indian Commerce Clause and acts to frustrate any congressional attempt to abrogate Eleventh Amendment immunity using the powers granted to it under the Bankruptcy Clause of Article I.[9] Thus,

6. *See, e.g.,* S. Elizabeth Gibson, *Congressional Response to Hoffman and Nordic Village: Amended Section 106 and Sovereign Immunity,* 69 AM. BANKR. L.J. 311 (1995) [hereinafter Gibson I].

7. *See Headrick v. Georgia (In re Headrick),* 200 B.R. 963 (Bankr.S.D.Ga.1996); *Burke v. Georgia (In re Burke),* 203 B.R. 493 (Bankr.S.D.Ga.1996). In these cases, the United States Bankruptcy Court for the Southern District of Georgia held that Congress can abrogate a state's sovereign immunity in the bankruptcy context because bankruptcy laws passed pursuant to Article I are enforceable as privileges and immunities of the citizens of the United States under the Fourteenth Amendment. *See also Mather v. Okla. Employment Sec. Comm'n (In re Southern Star Foods, Inc.),* 190 B.R. 419 (Bankr.E.D.Okla. 1995) (stating that Article I gives Congress the power to legislate on the subject of bankruptcy, and the Fourteenth Amendment allows debtors to enforce the provisions of the Bankruptcy Code in federal court notwithstanding the states' Eleventh Amendment immunity).

8. *See Ohio Agric. Commodity Depositors Fund v. Mahern,* — U.S. —, 116 S.Ct. 1411, 134 L.Ed.2d 537 (1996) (vacating and remanding for further consideration *Matter of Merchants Grain,* 59 F.3d 630 (7th Cir.1995), which held that Congress had authority under the Bankruptcy Clause to abrogate Eleventh Amendment immunity); *Nat'l Cattle Congress, Inc. v. Iowa Racing and Gaming Comm'n. (In re Nat'l Cattle Congress, Inc.),* 91 F.3d 1113, 1114 (8th Cir.1996) (automatic stay violation damage action against state reversed and remanded in light of *Seminole* ); *Light v. State Bar of Cal. (In re Light),* 1996 WL 341112, *2 (9th Cir.1996) (stating that *Seminole* forecloses any argument that § 106 abrogates Eleventh Amendment immunity); *In re Martinez,* 196 B.R. 225, 230 (D.P.R.1996) (finding that § 106 is unconstitutional to the extent it purports to apply to state ʌand commonwealth govern-

ments); *Sparkman v. Florida (In re York–Hannover Dev., Inc.),* 201 B.R. 137 (Bankr.E.D.N.C. 1996) (concluding that the Bankruptcy Clause does not authorize Congress to abrogate state sovereign immunity in § 106(a)); *Ellenberg v. Bd. of Regents (Matter of Midland Mechanical Contractors, Inc.),* 200 B.R. 453 (Bankr.N.D.Ga. 1996) (abrogation of Eleventh Amendment immunity found in § 106 has no validity in the wake of *Seminole*); *Schulman v. Cal. State Water Resources Control Bd. (In re Lazar),* 200 B.R. 358 (Bankr.C.D.Cal.1996) (discussing the broad reach of the *Seminole* decision); *Sacred Heart Hosp. of Norristown v. Pennsylvania (In re Sacred Heart Hosp. of Norristown),* 199 B.R. 129, 134 (Bankr.E.D.Pa.1996) (stating that the *Seminole* decision is meant to pertain to § 106 of the Bankruptcy Code). *See also* S. Elizabeth Gibson, *Sovereign Immunity in Bankruptcy: The Next Chapter,* 70 AM BANKR. L.J. 195, 201–03 (1996); Russell Dees, *Seminole Sovereign Immunity: It's Worse Than You Thought,* NORTON BANKRUPTCY LAW ADVISER, Sept. 1996; Karen Cordry, *A Tale of Two Sovereigns: Will the Bankruptcy Code Survive Seminole,* NORTON BANKRUPTCY LAW ADVISER, May 1996.

9. As stated by Justice Stevens in his dissent:
The importance of the majority's decision to overrule the Court's holding in *Pennsylvania v. Union Gas Co.* [491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989) ] cannot be overstated. The majority's opinion does not simply preclude Congress from establishing the rather curious statutory scheme under which Indian tribes may seek the aid of a federal court to secure a State's good faith negotiations over gaming regulations. Rather, it prevents Congress from providing a federal forum for a broad range of actions against States, from those sounding in copyright and patent law, *to those concerning bankruptcy,* environmental law, and the regulation of our vast national economy.

§ 106(a) does not effectively abrogate IC-SAC's Eleventh Amendment immunity, and it provides no predicate for an assertion of subject matter jurisdiction over Count Two of the Plaintiff's Complaint.

## III. CONSTRUCTIVE WAIVER UNDER SECTIONS 106(b) AND (c)

The second exception to the Eleventh Amendment's doctrine of sovereign immunity is waiver. In spite of its broad reading of the reach of the Eleventh Amendment, the Supreme Court has consistently adhered to the well-established rule that a *consenting* state may be sued for damages by an individual in federal court. *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985). *See Seminole,* at ——, 116 S.Ct. at 1131 n. 14 ("[T]his Court is empowered to review a question of federal law arising from a state court decision where a State has consented to suit ..."). Therefore, if a state voluntarily waives its sovereign immunity by consenting to be sued in federal court, the Eleventh Amendment will not bar the action. The test used to determine whether a state has waived its immunity is a stringent one, however. *Atascadero State Hosp.,* 473 U.S. at 241, 105 S.Ct. at 3146. Where a state has legislated on the subject, a state will be deemed to have waived its immunity only where it has stated its intention to waive "by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction." *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974) (quoting *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)).

In the absence of explicit consent by state statute or constitutional provision,[10] a state's consent to be sued in federal court may be constructively inferred through its affirmative conduct. *Clark v. Barnard,* 108 U.S. 436, 448, 2 S.Ct. 878, 883, 27 L.Ed. 780 (1883); *Hankins v. Finnel,* 964 F.2d 853, 856 (8th Cir.1992); *Garrity v. Sununu,* 752 F.2d 727, 738 (1st Cir.1984). In the history of Eleventh Amendment jurisprudence, it is generally recognized that the doctrine of constructive waiver inferred from conduct reached its outer limits in the Supreme Court case of *Parden v. Terminal Railway of Alabama Docks Dep't.,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964). In *Parden,* the Supreme Court considered the question of whether the operation of a state-owned railroad by the State of Alabama constituted consent to be sued in federal court under the Federal Employers' Liability Act

---

*Seminole,* at ——, 116 S.Ct. at 1134 (Stevens, J., dissenting) (emphasis added). Indeed, the *Seminole* majority's response to this criticism was not to dispute its conclusion, but instead to downplay its significance:

> [Justice Stevens'] conclusion is exaggerated both in its substance and in its significance. First, Justice Stevens' statement is misleadingly overbroad. We have already seen that several avenues remain open for ensuring state compliance with federal law. Most notably, an individual may obtain injunctive relief under *Ex parte Young* in order to remedy a state officer's ongoing violation of federal law. Second, contrary to the implication of Justice Stevens' conclusion, it has not been widely thought that the federal antitrust, bankruptcy, or copyright statutes abrogated the States' sovereign immunity. This Court has never awarded relief against a State under any of those statutory schemes.... Although the copyright and bankruptcy laws have existed practically since our nation's inception ... there is no established tradition in the lower federal courts of allowing enforcement of those federal statutes against the States.

*Id.,* at —— —— n. 16, 116 S.Ct. at 1131–32 n. 16. (citations omitted).

10. For an explicit waiver of Eleventh Amendment immunity to be found, a state must, by legislation or constitutional provision, expressly consent to be sued in federal court. Neither a state's consent to be sued "in any court of competent jurisdiction" nor its consent to be sued in its own state courts is sufficient to constitute a waiver of Eleventh Amendment immunity. *Atascadero State Hosp.,* 473 U.S. at 241, 105 S.Ct. at 3146; *Florida Dept. of Health v. Florida Nursing Home Assn.,* 450 U.S. 147, 149–150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981) (per curiam). Instead, to constitute a waiver, a state statute or constitutional provision must unequivocally specify the State's intention to subject itself to suit in *federal court.* *Atascadero State Hosp.,* 473 U.S. at 241, 105 S.Ct. at 3146–47. In this case, the Plaintiff has identified no Iowa statute or Iowa constitutional provision that would satisfy this test, and this Court finds none. Any argument that ICSAC has explicitly waived its Eleventh Amendment sovereign immunity must, therefore, fail.

(FELA). The language of the FELA provided that "[e]very common carrier by railroad while engaging in commerce between any of the several States ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce," and that "[u]nder this chapter an action may be brought in a district court of the United States...." *Parden*, 377 U.S. at 184; 84 S.Ct. at 1207. In the absence of an express statutory provision to the contrary, the *Parden* Court interpreted the general language of the FELA to indicate a congressional intent to include participating states within the full coverage of the Act. *See id.* at 189–90, 84 S.Ct. at 1211. The Court then concluded that "when [Alabama] began operation of an interstate railroad approximately 20 years after the enactment of the FELA, [it] necessarily consented to such suit as was authorized by that Act." *Id.* at 191, 84 S.Ct. at 1212.

Twenty-three years later, after a series of cases adhering to the rule that a state will be deemed to have waived its sovereign immunity only where unequivocally stated,[11] the Supreme Court ultimately overruled *Parden* in *Welch v. Texas Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987). In *Welch*, the issue before the Court was whether the language of a federal statute, the Jones Act, was sufficient to authorize suits against the State of Texas in federal court. The language of the Jones Act provided that:

> Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply.... Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located.

*Id.* at 470, 107 S.Ct. at 2944 n. 1. The *Welch* Court held that the general language of the Jones Act was insufficient to authorize suits against states in federal court. In so holding, the Court stated that Congress had not expressed "in unmistakable statutory language its intention to allow States to be sued in federal court," and that "to the extent that *Parden v. Terminal Railway* ... is inconsistent with the requirement that an abrogation of Eleventh Amendment immunity by Congress must be expressed in unmistakably clear language, it is overruled." *Id.* at 475, 478, 107 S.Ct. at 2947, 2948.

■■■■■ Although the Supreme Court overruled *Parden*'s adoption of the doctrine of constructive consent, it is clear that it did so only to the extent that *Parden* allowed constructive consent to be found in the absence of unmistakably clear language expressing Congress' intent to subject the states to suit in federal court. Under *Welch*, a federal statute may still be used to waive a state's Eleventh Amendment immunity as long as: 1) Congress has indicated a clear and unmistakable intent to make the states liable in federal court if they engage in a particular activity; and 2) a state then voluntarily chooses to engage in that conduct. *Id.* See ERWIN CHEMERINSKY, FEDERAL JURISDICTION 410 (2d ed. 1994) (citing Pagan, *Eleventh Amendment Analysis*, 39 ARK.L.REV. 447, 494–95 (1986)).[12] Since "[c]onstructive consent is not a doctrine commonly associat-

---

11. *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Fla. Dep't of Health v. Fla. Nursing Home Ass'n*, 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

12. Professor Chemerinsky states as follows:

In short, constructive waiver of Eleventh Amendment immunity is virtually nonexistent. If it ever will exist, it will be in situations where Congress indicates a clear intent to make states liable in federal court if they engage in a particular activity, and then a state voluntarily chooses to engage in that conduct. The congressional desire to make states liable must be in "unmistakable language in the statute itself" and it must be an area where the state realistically could choose not to engage in the activity.

CHEMERINSKY, *supra*, at 410. *See also* Gibson I, *supra*, at 346–47; S. Elizabeth Gibson, *Sovereign Immunity in Bankruptcy: the Next Chapter*, 70 AM.BANKR. L.J. 195, 211–12 (1996) [hereinafter Gibson II].

ed with the surrender of constitutional rights," a constructive waiver of a state's Eleventh Amendment immunity may only be found where there exists an "unequivocal indication that the state intends to consent to federal jurisdiction that would otherwise be barred by the Eleventh Amendment." *See Atascadero State Hosp.*, 473 U.S. at 238 n. 1, 105 S.Ct. at 3145 n. 1; *Edelman,* 415 U.S. at 673, 94 S.Ct. at 1360–61 (1974). In the current proceeding, therefore, the issue which must be decided is whether, in light of §§ 106(b) and (c) of the Bankruptcy Code, by counterclaiming, ICSAC has unequivocally and voluntarily acted to waive its constitutional right to immunity.[13]

 Section 106(b) of the Bankruptcy Code provides:

> A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

11 U.S.C. § 106(b) (1994). Section 106(c) provides:

> Notwithstanding any assertion of sovereign immunity by a governmental unit, there shall be offset against a claim or interest of the governmental unit any claim against such governmental unit that is property of the estate.

11 U.S.C. § 106(c) (1994). Plaintiff asserts that ICSAC's conduct in the face of §§ 106(b) and/or (c) constitutes a constructive waiver of its Eleventh Amendment immunity. Unlike the FELA in *Parden* or the Jones Act in *Welch,* subsections (b) and (c) of § 106 explicitly state Congress' intention to subject states to suit in federal court notwithstanding the Eleventh Amendment. Both subsections therefore satisfy the "unmistakable statutory language" standard set out in *Welch. Nordic Village,* 503 U.S. at 34, 112 S.Ct. at 1015.

Current § 106(b) specifically makes clear that, by filing a claim, a governmental unit waives its sovereign immunity as to any claim against it that is property of the estate [14] and that arose out of the same trans-

---

**13.** ICSAC argues that, to "resolve" the waiver issue, it will withdraw its counterclaim from this proceeding. This argument must fail, however, as it is antithetical to the definition of a waiver. Once a state waives its Eleventh Amendment immunity in a particular case, such action cannot ordinarily be undone. *Cf. Hosp. Assoc. of N.Y. State, Inc. v. Toia,* 435 F.Supp. 819, 827 (1977) (stating that a state should not ordinarily be permitted to waive its immunity from suit and then withdraw its consent).

ICSAC also argues that the filing of its Counterclaim in the current proceeding cannot possibly constitute a waiver because the Attorney General of Iowa does not possess the statutory authority under Iowa law to waive the state's sovereign immunity. It is true that, absent specific authorization by the state legislature, an Attorney General may not waive a state's Eleventh Amendment immunity by making a general appearance in federal court. *Ford Motor Co. v. Dep't of Treasury,* 323 U.S. 459, 467, 65 S.Ct. 347, 352, 89 L.Ed. 389 (1945); *O'Connor v. Slaker,* 22 F.2d 147, 152 (8th Cir.1927); *Midland Mechanical Contractors, Inc.,* 200 B.R. at 458. In this case, however, the Attorney General did more than simply make a general appearance to defend on the merits. The Attorney General filed a counterclaim seeking affirmative relief in the form of a judgment. Iowa Code § 13.2(2) grants the Attorney General the authority to "[p]rosecute and defend in any other court or tribunal,

all actions and proceedings, civil or criminal, in which the state may be a party or interested, when, in the attorney general's judgment, the interest of the state requires such action...." IOWA CODE § 13.2(2) (1996). Section 13.2 thus authorizes the Attorney General to bring suit in federal court whenever the state's interests are at stake. *See Iowa v. Scott & Fetzer Co.,* 1982 WL 1874, *2–3 (S.D.Iowa 1982). It follows from § 13.2 that, to the extent that such affirmative conduct constitutes a waiver under Eleventh Amendment law, the Attorney General is authorized to constructively waive Iowa's Eleventh Amendment immunity by bringing a claim in federal court. Therefore, although the Attorney General of Iowa does not possess the authority to waive Iowa's sovereign immunity by merely making a general appearance in federal court, this Court concludes that the Attorney General has the authority to waive Iowa's immunity by bringing a claim in federal court.

**14.** Sections 106(b) and (c) each require the claim asserted against the governmental unit to be one that is property of the estate. Pursuant to 11 U.S.C. § 1306, the § 362(h) claim asserted in Count Two of the Plaintiff's Complaint constitutes property of the estate as "property . . . that the debtor acquire[d] after the commencement of the case but before the case [was] closed, dismissed, or converted." *United States v. McPeck (In re McPeck),* 910 F.2d 509, 512 n. 7 (8th

action or occurrence out of which the governmental unit's claim arose. Section 106(b) therefore allows the estate to prevent the governmental unit from recovering on any claim it has against the estate as long as the claims arose out of the same transaction or occurrence. The constitutional underpinnings of § 106(b) are the many cases holding that, as a matter of law, a governmental unit that commences a case in federal court waives its sovereign immunity as to claims arising out of the same transaction or occurrence, at least up to the amount of its claim. *See Gardner v. State of New Jersey*, 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947); *Clark v. Barnard*, 108 U.S. at 436, 2 S.Ct. at 883; *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 946–47 (Fed.Cir.1993), *cert. denied, Regents v. Genentech, Inc.*, 510 U.S. 1140, 114 S.Ct. 1126, 127 L.Ed.2d 434 (1994); *U.S. v. Johnson*, 853 F.2d 619, 621 (8th Cir.1988); *Frederick v. U.S.*, 386 F.2d 481, 488 (5th Cir.1967); *Fletcher v. U.S. Dep't of Energy*, 763 F.Supp. 498, 502 (D.Kan.1991); *Woelffer v. Happy States of America, Inc.*, 626 F.Supp. 499, 502 (N.D.Ill.1985); *Bd. of Regents of the Univ. of Neb. v. Dawes*, 370 F.Supp. 1190, 1191 (D.Neb.1974); *Burgess v. M/V Tamano*, 382 F.Supp. 351 (D.Me.1974), *vacated on other grounds*, 564 F.2d 964 (1st Cir.1977), *cert. denied, M/V Tamano v. United States*, 435 U.S. 941, 98 S.Ct. 1520, 55 L.Ed.2d 537 (1978). Unlike the recoupment cases, however, the waiver found in § 106(b) is unlimited in amount, and to this extent § 106(b) may be subject to constitutional challenge. Gibson I, *supra*, at 346–47; Gibson II, *supra*, at 210–11.

Section 106(c)'s provision for waiver is much narrower than that provided in § 106(b). Section 106(c) merely provides that the estate may offset any claim it has against the governmental unit's claim or interest in the case, without regard to whether the estate's claim against the government arose out of the same transaction or occurrence as the government's claim. S.Rep.No. 95–989, at 29–30 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5815–16; H.R.Rep. No. 95–595, at 317 (1977), *reprinted in* 1978

U.S.C.C.A.N. 5963, 6274. Unlike § 106(b), § 106(c) limits the amount of the estate's claim to the amount of the governmental unit's claim; it does not permit the estate to affirmatively recover against the governmental unit. Insofar as § 106(c) allows for the offset of claims which do not arise out of the same transaction or occurrence, however, it too may be subject to constitutional challenge. Gibson I, *supra*, at 346–47; Gibson II, *supra*, at 210–11.

The Court need not reach these constitutional issues, however, since I conclude that neither § 106(b) nor § 106(c) apply to the facts of this case because ICSAC has not filed a proof of claim in the case.

Originally entitled §§ 106(a) and (b) respectively, current §§ 106(b) and (c) were both part of the 1978 Bankruptcy Code. As the legislative history to § 106 makes clear, current §§ 106(b) and (c) were originally intended to apply *only* in situations where a governmental unit has filed a proof of claim. S.Rep. No. 95–989, at 29–30 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5815–16; H.R.Rep. No. 95–595, at 317 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6274. The majority of the cases construing old § 106(a) and virtually all the cases construing old § 106(b) held that the filing of a claim by the governmental unit was a prerequisite to the application of either section. *See Hoffman v. Conn. (In re Willington Convalescent Home Inc.)*, 850 F.2d 50 (2d Cir.1988); *Neavear v. Schweiker (In re Neavear)*, 674 F.2d 1201 (7th Cir.1982); *In re Husher*, 131 B.R. 550 (E.D.N.Y.1991); *Kincaid v. United States Veterans Admin. (In re Kincaid)*, 148 B.R. 844 (Bankr.E.D. Ky 1992); *Hannan v. United States (In re Wilwerding)*, 130 B.R. 294 (Bankr.S.D.Iowa 1991); *Saunders v. Reeher (In re Saunders)*, 105 B.R. 781, 789 (Bankr. E.D.Pa.1989); *R.I. Ambulance Servs., Inc. v. Begin (In re R.I. Ambulance Servs., Inc.)*, 92 B.R. 4 (Bankr.D.R.I.1988); *Inslaw, Inc. v. United States (In re Inslaw, Inc.)*, 76 B.R. 224, 229 n. 7 (Bankr.D.D.C.1987); *In re Community Hosp. of Rockland County*, 5 B.R. 7 (Bankr.S.D.N.Y.1979). When Congress

Cir.1990); *Price v. United States (In re Price)*, 130 B.R. 259, 269 (N.D.Ill.1991); *Flynn v. Internal Revenue Serv. (In re Flynn)*, 169 B.R. 1007, 1016

(Bankr.S.D.Ga.1994); *In re Solis*, 137 B.R. 121, 126 (Bankr.S.D.N.Y.1992).

amended § 106 in 1994, it drastically modified old § 106(c) and renumbered it current § 106(a). Congress made only minor modifications to the wording of current §§ 106(b) and (c), however.[15] The Official Comments to the Bankruptcy Reform Act of 1994 indicate that the changes made to ·current § 106(b) were intended to clarify that the minority of cases which had held that old § 106(a) could apply even where the governmental unit had not filed a claim were incorrectly decided;[16] the Official Comments say nothing about the changes made in current § 106(c). 140 CONG.REC. H10,766 (daily ed. Oct. 4, 1994); Gibson I, *supra*, at 334–37.[17] It appears, therefore, that the modifications made to current §§ 106(b) and (c) in 1994 did not change the fact that both subsections were originally and always meant to apply only where the governmental unit has filed a proof of claim. *See Aetna Casualty & Surety Co. v. LTV Steel Co., Inc. (In re Chateaugay Corp.)*, 94 F.3d 772, 779 n. 10 (2d Cir. 1996); *Ossen v. Conn.*, 203 B.R. 17, 21–22 (Bankr.D.Conn.1996). *But see* 2 LAWRENCE P. KING ET AL., COLLIER ON BANKRUPTCY ¶ 106.03 (15th ed. 1996).

Because ICSAC has not filed a proof of claim in the Plaintiff's bankruptcy case, the requirements of §§ 106(b) and (c) have not been satisfied.

## IV. RECOUPMENT

The inapplicability of §§ 106(b) and 106(c), or of any other federal statute purporting to waive ICSAC's immunity from suit, does not end the Court's waiver inquiry, however. It has long been held that, when a state takes affirmative action to recover on a claim in federal court, the state waives its Eleventh Amendment immunity with respect to any counterclaims that arise out of the same transaction or occurrence as the state's claim; i.e., with respect to any compulsory counterclaims asserted against the state. *See Gardner*, 329 U.S. at 573–74, 67 S.Ct. at 472; *Genentech, Inc.*, 998 F.2d at 946–47; *Jones v. Yorke (In re Friendship Med. Ctr, Ltd.)*, 710 F.2d 1297, 1300 (7th Cir.1983); *Fletcher*, 763 F.Supp. at 502; *Woelffer*, 626 F.Supp. at 502; *Bd. of Regents of the Univ. of Neb.*, 370 F.Supp. at 1191; *Burgess*, 382 F.Supp. at 355. *See generally* 3 JAMES W. MOORE ET AL, MOORE'S FEDERAL PRACTICE, ¶ 13.19[2.–2] (2d ed. 1996). *Cf. United States v. Forma*, 42 F.3d 759, 764 (2d Cir.1994); *Johnson*, 853 F.2d at 621; *Frederick*, 386 F.2d at 488. Under this "recoupment theory" of waiver, the state's waiver is limited in scope to those counterclaims asserted for the purpose of defeating or diminishing the state's recovery, and no affirmative recovery against the state is permitted. *Genentech*, 998 F.2d at 947. The Supreme Court's recent *Seminole* decision contains no indication that the recoupment doctrine, a matter of long-standing immunity jurisprudence, has been undermined. *See Employees*, 411 U.S. at 295 n. 10, 93 S.Ct. at 1623 n. 10 (1973) (Marshall, J., concurring). *See also* Karen Cordry, *Seminole, Sovereign Immunity, and the Supremacy Clause: The Sky Isn't Necessarily Falling*, NORTON BANKRUPTCY LAW ADVISER, Dec. 1996, at 8.

In this case, the filing of IC-SAC's Counterclaim constitutes affirmative action, just as if ICSAC had filed a complaint. *See Paul N. Howard v. P.R. Aqueduct Sewer Auth.*, 744 F.2d 880, 886 (1st Cir.1984) (holding that the filing of a counterclaim and third party complaint constitutes a waiver of a state's Eleventh Amendment im-

**15.** Section 106(b) now specifically requires the filing of a proof of claim by the governmental unit; § 106(c) was modified to delete the word "allowed" as a modifier of the word "claim."

**16.** The Official Comments to § 113 of the Bankruptcy Reform Act of 1994 read as follows:

Section 106(b) is clarified by allowing a compulsory counterclaim to be asserted against a governmental unit only where such unit has actively filed a proof of claim in the bankruptcy case. This has the effect of overruling contrary case law, such as *Sullivan v. Town &*

*Country Nursing Home [Home Nursing] Services, Inc.*, 963 F.2d 1146 (9th Cir.1992); *In re Gribben*, 158 B.R. 920 (S.D.N.Y.1993); and *In re Craftsman [Craftsmen], Inc.*, 163 B.R. 88 (Bankr.W.D.Tex.1994), that interpreted § 106(a) of current law.
140 CONG.REC. H10,766 (daily ed. Oct. 4, 1994).

**17.** Remarks made by Senator Heflin just after the Senate passed § 106(c) indicate that redesignated § 106(c) was intended to codify existing § 106(b) and that no substantive changes were intended with regard to that section. *See* 140 CONG.REC. S 14,461 (daily ed. Oct. 6, 1994).

munity), *cert. denied,* 469 U.S. 1191, 105 S.Ct. 965, 83 L.Ed.2d 970 (1985); *Newfield House v. Mass. Dept. of Pub. Welfare,* 651 F.2d 32, n. 3 (1st Cir.1981) (a state that sought removal to federal court and that filed a counterclaim waived its Eleventh Amendment immunity), *cert. denied,* 454 U.S. 1114, 102 S.Ct. 690, 70 L.Ed.2d 653 (1981); *Cobb Coin Co., Inc. v. Unidentified, Wrecked & Abandoned Sailing Vessel,* 549 F.Supp. 540, 555 (S.D.Fla.1982) (a state's intervention, filing of answer and counterclaim constitutes a waiver of sovereign immunity). *Cf. Unix System Laboratories, Inc. v. Berkeley Software Design, Inc.,* 832 F.Supp. 790, 801 (D.N.J.1993) (stating that where a state is an affirmative participant in litigation it waives its defense of sovereign immunity). Unlike a mere general appearance by the state in federal court, the filing of a counterclaim constitutes *affirmative conduct* on the part of the state and is thus significantly more than a simple appearance in court for the purpose of defending on the merits or for the limited purpose of contesting jurisdiction. *Cf. Mascheroni v. Board of Regents,* 28 F.3d 1554, 1560 (10th Cir.1994). Therefore, the filing of ICSAC's Counterclaim in the current proceeding constitutes a waiver of its Eleventh Amendment immunity with respect to any claims asserted against it that arise out of the same transaction or occurrence upon which its Counterclaim is based.

■ To determine whether competing claims "arise out of the same transaction or occurrence," courts have utilized the same analysis used to identify compulsory counterclaims under Federal Rule of Civil Procedure 13(a). *Cochrane v. Iowa Beef Processors, Inc.,* 596 F.2d 254, 264 (8th Cir.1979), *cert. denied,* 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979); *Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.),* 973 F.2d 1065, 1086–87 (3d Cir.1992); *United States v. Bulson (In re Bulson),* 117 B.R. 537, 541 (9th Cir. BAP 1990), *aff'd* 974 F.2d 1341 (9th Cir.1992). *See* S.Rep. No. 95–989, at 29–30 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5815. In the Eighth Circuit, the determination of whether competing claims "arise out of the same transaction or occurrence," is made by considering one or more of the following four factors:

(1) Are the issues of fact and law raised by the claim and counterclaim largely the same?

(2) Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule?

(3) Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim?

(4) Is there any logical relation between the claim and the counterclaim?

*Cochrane,* 596 F.2d at 264. In *United States v. McPeck,* 910 F.2d 509, 512 (8th Cir.1990), the Court of Appeals for the Eighth Circuit specifically refrained from deciding the question of whether a debtor's claim for damages for violation of the automatic stay arises out of the same transaction or occurrence as a governmental unit's claim for recovery of the underlying debt. In the case of *Tullos v. Parks,* 915 F.2d 1192, 1195 (8th Cir.1990), however, the Eighth Circuit emphasized the importance of the logical relation test in making this determination, stating that "the logical relation test provides the needed flexibility for applying Rule 13(a)."

■ Applying the logical relation test to the facts of this case, this Court agrees with the clear majority of available case law and concludes that a debtor's § 362(h) claim against a governmental unit is logically related to the governmental unit's claim for recovery of the underlying debt. *See, e.g., Price v. United States (In re Price),* 42 F.3d 1068, 1074 (7th Cir.1994); *Univ. Med. Ctr.,* 973 F.2d at 1086–87; *Bulson,* 117 B.R. at 541; *United States v. Lile (In re Lile),* 161 B.R. 788, 791 (S.D.Tex.1993); *United States v. Fernandez (In re Fernandez),* 132 B.R. 775, 780 (M.D.Fla.1991); *Flynn v. Internal Revenue Serv. (Matter of Flynn),* 169 B.R. 1007, 1017 (Bankr.S.D.Ga.1994). Accordingly, this Court holds that the Plaintiff's § 362(h) claim against ICSAC arises out of the same transaction or occurrence as ICSAC's claim for recovery of the underlying debt. In so holding, the Court is mindful of Rule 13(a)'s goal of preventing a multiplicity of actions and a duplication of judicial efforts, as well as the general deterrent policies underlying § 362(h) of the Bankruptcy Code. There-

fore, by choosing to file a counterclaim in this case, ICSAC has waived its Eleventh Amendment immunity from suit as to Count Two of the Plaintiff's Complaint to the extent that the Plaintiff's damages under Count Two are equal to or less than ICSAC's Counterclaim for judgment in the amount of the underlying debt. *Cf. Langenkamp v. Culp,* 498 U.S. 42, 44, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1990); *In re Lazar,* 200 B.R. at 380–81.

ACCORDINGLY, IT IS HEREBY ORDERED THAT Defendant ICSAC's Motion to Dismiss is DENIED.